# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

FORTE BIOSICENCES, INC., a Delaware
corporation,

       Plaintiff,

       v.

CAMAC FUND, LP, a Delaware limited
partnership, et al.

       Defendants.

Case No. 3:23-cv-02399-DCG

# MEMORANDUM OF LAW IN SUPPORT OF
# <u>DEFENDANTS' MOTION TO DISMISS</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 3

    A.    The Parties ....................................................................................................... 3

    B.    Forte's Management Destroys Virtually All Shareholder
          Value And Then Focuses On Entrenching Themselves ......................................... 4

    C.    To Avoid Losing Two Seats In The 2023 Director
          Election, Forte Floods The Market With New Shares ........................................... 6

    D.    Camac Sues For Breaches Of Fiduciary
          Duty In Connection With The Director Election ................................................... 8

    E.    Forte Retaliates By Filing This Action .................................................................. 8

    F.    Defendants Supplement Their Filings To Disclose This Litigation ...................... 9

ARGUMENT ...................................................................................................................... 10

I.    PLAINTIFF FAILS TO STATE A
    CLAIM UNDER FEDERAL SECURITIES LAW .......................................................... 10

    A.    Plaintiff's Williams Act Claims Do Not Present A Justiciable
          Case Or Controversy As Required For Subject Matter Jurisdiction ..................... 11

          1.    Plaintiff Does Not Have Standing Under § 14(a) ..................................... 12

          2.    Plaintiff Also Lacks Standing Under § 13(d) ........................................... 14

    B.    Plaintiff's Claims For Declaratory And Injunctive Relief Are Moot .................. 15

    C.    The Complaint Fails To State A Claim Under The Williams Act ........................ 18

          1.    Plaintiff Fails To Allege Facts Establishing
                Defendants' Proxy Statement Was Materially
                False Or Misleading As Required by § 14(a) ........................................... 19

          2.    Plaintiff Fails To Allege Facts
                Establishing Defendants Entered An Agreement
                To Act As A Group As Required By § 13(d) ........................................... 25

II.    PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED
    FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM .................. 27

A.     The Court Should Decline to Exercise Supplemental Jurisdiction ...................... 27

B.     The Complaint Fails to State A Claim for Tortious Interference ......................... 28

CONCLUSION ..................................................................................................................... 29

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*7547 Corp. v. Parker & Parsley Development Partners, L.P.*,
   38 F.3d 211 (5th Cir. 1994) ...............................................................................16-17

*Alexander v. Sandoval*,
   525 U.S. 275 (2001) .......................................................................................... 16

*In re Apple Computer Securities Litigation*,
   886 F.2d 1109 (9th Cir. 1989) ............................................................................ 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 22

*Ashford Hospitality Prime, Inc. v. Sessa Capital (Master) LP*,
   No. 3:16-cv-00527, 2017 WL 2955366 (N.D. Tex. Feb. 17, 2017) ............. 8, 19-20, 24-25, 33

*ATSI Communications Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ................................................................................. 23

*Avnet, Inc. v. Scope Industries*,
   499 F. Supp. 1121 (S.D.N.Y. 1980) .................................................................... 21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 23

*Bradford v. Vento*,
   48 S.W.3d 749 (Tex. 2001) ................................................................................ 34

*Brookshire Brothers Holding, Inc. v. Dayco Products., Inc.*,
   554 F.3d 595 (5th Cir. 2009) ............................................................................. 32

*Cartica Management, LLC v. Corpbanca, S.A.*,
   50 F. Supp. 3d 477 (S.D.N.Y. 2014) ................................................................... 22

*Cendec Corp. v. Farley*,
   573 F. Supp. 1382 (S.D.N.Y. 1983) .................................................................... 22

*Choice Inc. of Texas v. Greenstein*,
   691 F.3d 710 (5th Cir. 2023) ............................................................................. 16

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
   417 S.W.3d 909 (Tex. 2013) .............................................................................. 33

*Ferrer v. Chevron Corp.*,
   484 F.3d 776 (5th Cir. 2007) ................................................................ 23

*Forgent Networks, Inc. v. Sandberg*,
   No. A-09-CA-499, 2009 WL 2927015 (W.D. Tex. Aug. 27, 2009) ....................... 22

*Forum Energy Technologies, Inc. v. Jason Oil & Gas Equip., LLC*,
   No. CV H-20-3768, 2022 WL 1103078 (S.D. Tex. Apr. 13, 2022) ....................... 33

*Forward Industries, Inc. v. Wise*,
   No. 14-CV-5365, 2014 WL 6901137 (S.D.N.Y. Sept. 23, 2014) ......................... 31

*Gearhart Industries, Inc. v. Smith International Inc.*,
   741 F.2d 707 (5th Cir. 1984) ......................................................... 16, 20

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
   286 F.3d 613 (2d Cir. 2002) ............................................................ 16-19

*Hulliung v. Bolen*,
   548 F. Supp. 2d 336 (N.D. Tex. 2008) ................................................. 24

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ...................................................................... 17

*KBR Inc. v. Chevedden*,
   776 F. Supp. 2d 415 (S.D. Tex. 2011) ................................................. 19

*Kowal v. MCI Communications Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ......................................................... 31

*Land & Buildings Investment Management, LLC v. Taubman Centers, Inc.*,
   No. 17-11576, 2017 WL 3499900 (E.D. Mich. Aug. 16, 2017) .......................... 22

*Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*,
   No. 5:15-mc-80165, 2015 WL 13469916 (N.D. Tex. Sept. 24, 2015) .................... 33

Liberty National Insurance Holding Co. v. Charter Co.,
   734 F.2d 545 (11th Cir. 1984) ................................................ 17, 19, 21-22, 29

*Lions Gate Entertainment Corp. v. Icahn*,
   No. 10 CV 08169, 2011 WL 1217245 (S.D.N.Y. Mar. 30, 2011) ......................... 22

*meVC Draper Fisher Jurvetson Fund I, Inc. v. Millenium Partners, L.P.*,
   260 F. Supp. 2d 616 (S.D.N.Y. 2003) .................................................. 25

*Morales v. Quintel Entertainment, Inc.*,
   249 F.3d 115 (2d Cir. 2011) .................................................................. 30

*Motient Corp. v. Dondero*,
   529 F.3d 532 (5th Cir. 2008) ..........................................................17, 20-21

*Nano Dimension Ltd. v. Murchison Ltd.*,
   No. 1:23-cv-02566, 2023 WL 4422788 (S.D.N.Y. July 10, 2023).................... 8, 21-22, 31-32

*Omnicare, Inc. v. Laborers Dist. Council Construction Industry Pension Fund*,
   575 U.S. 175 (2015)........................................................................... 28

*Potomac Capital Markets Corp. v. Prudential-Bache Corp. Dividend Fund, Inc.*,
   726 F. Supp. 87 (S.D.N.Y. 1989) ............................................................ 27

*Rondeau v. Mosinee Paper Corp.*,
   422 U.S. 49 (1975)............................................................................ 17

*Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*,
   No. 18 Civ. 4201, 2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) .......................... 21

*Taro Pharmaceutical Industries, Ltd. v. Sun Pharmaceutical Industries, Ltd.*,
   No. 09 Civ. 8262, 2010 WL 2835548 (S.D.N.Y. July 13, 2010) ..................... 23, 25

*Tax Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Capital, LLC*,
   No. 22-1101, 2023 WL 5835786 (D.P.R. Aug. 10, 2023)................................ 8, 22-23, 31-32

Tenet Healthcare Corp. v. Community Health System, Inc.,
   839 F. Supp. 2d 869 (N.D. Tex. 2012) .....................................................8, 19-20

Treadway Companies, Inc. v.  Care Corp.,
   638 F.2d 357 (2d Cir. 1980)................................................................. 21

TSC Industries, Inc. v. Northway, Inc.,
   426 U.S. 438 (1976).......................................................................... 25

*Tuchman v. DSC Communications Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ................................................................ 32

*Vestcom International v. Chopra*,
   114 F. Supp. 2d 292 (D.N.J. 2000)..................................................... 20-21, 23-24

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991).....................................................................18, 28-29

*Weeden v. Continental Health Affiliates, Inc.*,
   713 F. Supp. 396 (N.D. Ga. 1989) ......................................................................... 23

## **Statutes and Other Authorities**                                    **Page(s)**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 18

Fed. R. Civ. P. 12(b)(6) .................................................................................. 24, 34

Fed. R. Civ. P. 9(b) ..................................................................................... 8, 25, 34

U.S. Const. art. III, § 2 ......................................................................................... 17

15 U.S.C. § 78m(d) .............................................................................................. 16

15 U.S.C. § 78n(a) ................................................................................................ 16

15 U.S.C. § 78u-4(b) ............................................................................................ 25

28 U.S.C. § 1367 .................................................................................................. 33

17 C.F.R. § 240.14a-9 ..................................................................................... 16, 31

## PRELIMINARY STATEMENT

This is a retaliatory lawsuit filed after a contested election for two seats on the Board of Directors (the "Board") of Forte Biosciences, Inc ("Forte" or the "Company")—a company that pivoted to an unproven, pre-clinical treatment for autoimmune diseases following the complete failure of its prior treatment for inflammatory skin conditions and a greater-than-90% decline in its stock price. Defendants are among Forte's largest shareholders.

The real dispute in this case is over what to do with the Company's cash. While Forte has destroyed virtually all shareholder value in recent years, it still retains a valuable asset: a cash reserve that exceeds its market capitalization (*i.e.*, shareholders would realize more by liquidating the Company than operating it). Forte's managers, wedded to their jobs and salaries, have rejected calls from shareholders, including the Defendants, to wind down or otherwise return some of the Company's excess resources to shareholders. Instead, they have chosen to roll the dice on yet another new and "promising" treatment and are quickly burning through Forte's cash developing it. Unimpressed, Camac (defined below) nominated two new directors for election to the Board at the 2023 annual shareholder meeting. Camac's nominees were shoo-ins to win, which Forte admitted at the time. Rather than allow shareholders to decide the Company's direction, Forte rigged the election on the eve of the vote through an enormous private offering, at heavily discounted prices, to a hand-selected group of investors and members of management. The offering nearly doubled the Company's outstanding stock, diluted all unaffiliated shareholders, and turned the election on its head. The incumbent directors retained their seats, and Camac sued in the Delaware Court of Chancery for breaches of fiduciary duty (the "Delaware Litigation"). That litigation is ongoing and oral argument on the defendants' motion to dismiss will be heard on February 14, 2024.

On the Saturday after Camac filed its amended complaint in the Delaware Litigation, which added a claim for wrongful dilution and additional allegations demonstrating management's misconduct, Forte filed this action. The Complaint (ECF 1) is replete with brackets, misspellings, and internal notes, suggesting that Forte rushed the filing to emphasize its retaliatory nature. It tells a facially implausible (and untrue) story of a so-called "wolf pack" that never existed and a purported "scheme" to violate federal securities laws to no apparent end. Even accepting these half-baked allegations as true, the Complaint fails, as a matter of law, for a host of reasons.

First, Plaintiff has no standing to bring claims under the Securities Exchange Act of 1934 (the "Exchange Act"). Sections 14(a) and 13(d) were intended to protect shareholders—not issuers like Forte. The claims should be dismissed with prejudice. *See, e.g., Ashford Hospitality Prime, Inc. v. Sessa Capital (Master) LP,* No. 3:16-cv-00527, 2017 WL 2955366, at *9 (N.D. Tex. Feb. 17, 2017) (Godbey, J.); *Tenet Healthcare Corp. v. Community Health Sys., Inc.*, 839 F. Supp. 2d 869, 871-72 (N.D. Tex. 2012).

Second, even if Forte had standing to assert the Exchange Act claims (it does not), the claims are now moot. Camac and the other Defendants have subsequently amended their filings to disclose the allegations in this litigation and the Complaint itself. Shareholders now know all there is to know about Forte's meritless allegations, obviating Plaintiff's claims and necessitating dismissal under long-established federal case law. *See, e.g., Tax Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Capital, LLC*, No. 22-1101, 2023 WL 5835786, at *8 (D.P.R. Aug. 10, 2023); *Nano Dimension Ltd. v. Murchison Ltd.*, No. 1:23-cv-02566, 2023 WL 4422788, at *10-11 (S.D.N.Y. July 10, 2023).

Third, even if the Court were to consider the Exchange Act claims on the purported merits (and it should not), Forte has come nowhere near satisfying the heightened pleading burden under

Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"). The six categories of purported § 14(a) violations derive from a combination of rank speculation, semantics, disagreement with legitimately held business opinions, and literally true facts from SEC filings and other public records. The § 13(d) claim is likewise deficient because it is premised entirely on the fact that some Defendants purchased shares around the same time and held similar (and logical) views about the Board's years-long mismanagement, and thus must have been in contact with each other. Case law demonstrates that such conclusory allegations, even at the pleading stage, are wholly insufficient to state a federal securities claim.

Finally, Forte's lone state-law claim for tortious interference should also be dismissed. If the Exchange Act claims are dismissed, the supplemental jurisdiction factors do not suggest that this Court should keep the claim. In any event, the claim also fails on its face. Forte has not even attempted to allege the elements of a tortious interference claim, including how, if at all, the Defendants' conduct purportedly "interfered" with Forte or any of its actual or potential investors.

For the reasons set forth herein, the Complaint should be dismissed in its entirety with prejudice as to all Defendants.

## **FACTUAL BACKGROUND**

### A.    **The Parties**

Forte is a biopharmaceutical company that has failed to develop potential treatments over the years, including most recently its sole lead product, FB-401, which Forte abandoned in September 2021. Forte Compl. ¶ 56.[1]

---

[1] Citations to the Complaint (ECF 1) in this action are styled as "Forte Compl. ¶ __." All letter "Ex. __" citations are to the exhibits attached to Forte's Complaint. The facts set forth below are derived from the Complaint, documents incorporated by reference, and judicially noticeable facts such as the public filings in the Delaware Litigation. *See United States ex rel. Willard v. Humana*

Defendants Camac Fund, LP ("Camac"),[2] ATG Fund II LLC ("ATG"),[3] Funicular Funds, LP ("Funicular"),[4] and BML Investment Partners, L.P. ("BML")[5] are among Forte's largest stockholders. *Id.* ¶¶ 16, 23, 31-32, 40. Defendants Chris McIntyre ("McIntyre")[6] and Michael G. Hacke ("Hacke") are investment professionals who were nominated by Camac for election to Forte's Board. *Id.* ¶¶ 97.

**B.    Forte's Management Destroys Virtually All Shareholder Value And Then Focuses On Entrenching Themselves**

In September 2021, Forte disclosed that its sole product, FB-401, had failed in clinical trials. Forte Compl. ¶ 56. Thereafter, its stock price collapsed from a high of $31.47 per share on September 2, 2021, to a low of $4.91 the following day. Del. Compl. ¶ 3.[7] By 2022, its market capitalization was less than $20 million despite holding over $45 million in cash and no meaningful debt. *Id.* ¶ 4. Rather than distributing the remaining cash to its shareholders or otherwise engaging

---

*Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir.2003) ("[C]ourt may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken.").

[2] Defendants Camac Partners, LLC, Camac Capital, LLC, and Eric Shahinian (the "Camac Affiliates") are affiliates of Camac but do not own Forte stock. *See* Forte Compl. ¶¶ 12-14.

[3] Defendants ATG Capital Management, LLC and Gabriel Gliksberg (the "ATG Affiliates") are affiliates of ATG but do not own stock in Forte. *See* Forte Compl. ¶¶ 25-31.

[4] Defendants The Funicular Fund, LP, Cable Car Capital LLC, and Jacob Ma-Weaver (the "Funicular Affiliates") are affiliates of Funicular but do not own stock in Forte. *See* Forte Compl. ¶¶ 32-36.

[5] Defendants BML Capital Management, LLC and Braden Leonard (the "BML Affiliates") are affiliates of BML but do not own stock in Forte. *See* Forte Compl. ¶¶ 40-43.

[6] McIntyre Partnerships, LP, McIntyre Capital Management LP, McIntyre Capital GP, LLC, McIntyre Capital Management GP, LLC are affiliates of McIntyre. *See* Forte Compl. ¶¶ 18-23.

[7] Certain contextual facts are drawn from the Verified Amended Class Action and Derivative Complaint, publicly filed on October 27, 2023 in the related action in Delaware Court of Chancery. *See Camac Fund, LP v. Paul A. Wagner, et al.*, No. 2023-0817-MTZ; *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper . . . to take judicial notice of matters of public record."). Citations to the Amended Complaint in the Delaware action are styled as "Del. Compl. ¶ __."

with shareholders regarding strategy, Forte disclosed in May 2022 a newly contrived plan to "pivot" toward a speculative product, FB-102. *Id.* ¶ 5; *see also* Forte Compl. ¶ 58. After Forte announced the plan, its market capitalization fell to approximately $16 million, reflecting a 60% discount to the value of its cash. Del. Compl. ¶ 31. By the end of May 2022, Forte's stock price had declined by nearly 40% year-to-date and 93% since entering the public market. *Id.* ¶ 33.

Following the stock-price collapse, Forte's Board began to focus on entrenchment by diluting vocal shareholders rather than salvaging shareholder value. *Id.* ¶ 34. On May 24, 2022 and July 5, 2022, respectively, BML (a 8.94% shareholder) and Funicular (a 7.5% shareholder) independently disclosed that they had each called on Forte and its Board to return capital to shareholders. *Id.* ¶¶ 35-38; Forte Compl. ¶ 72. On July 11, 2022, the Board responded by enacting a "poison pill" with a 10% threshold. Del. Compl. ¶ 39. A poison pill is a defensive mechanism providing that if any shareholder acquired more than 10% of its stock, Forte would issue new shares to other shareholders at an extremely discounted rate, thereby diluting the shareholder's ownership percentage and discouraging its efforts to influence management. *Id.*

On July 19, 2022, Funicular disclosed its ownership had increased to 9.9%. *Id.* ¶ 41; Forte Compl. ¶ 76. Independently, in early August 2022, Camac disclosed that it held 9.8% of Forte's outstanding shares and, separately and independently, ATG disclosed that it held 9.9%. Forte Compl. ¶ 77; Del. Compl. ¶¶ 42-44. Thus, by at least August 2022, the Board and all Forte shareholders knew that roughly 40% of outstanding shares were held by sophisticated, independent investors who had made repeated Schedule 13D disclosures and were openly and publicly demanding change at Forte and a reconsideration of its capital allocation policies. Forte Compl. ¶¶ 77-81; Del. Compl. ¶ 45.

The Board responded with more defensive action. On August 15, 2022, Forte disclosed that between July and August it had "issued an additional 5.6 million shares of common stock"—*i.e.*, roughly 38% of then-outstanding shares—"for gross proceeds of approximately $7.0 million" through an at-the-market offering. *Id.* ¶ 47; *see* Forte Compl. ¶ 88. Prior to the issuance, there were only 14.8 million shares outstanding, and thus the new shares significantly diluted the sophisticated investors' shares. Del. Compl. ¶ 47. The Board disingenuously stated that the proceeds of the offering would be used to "strength[en] its balance sheet," despite the fact that Forte had $40 million in cash and stated only three months earlier that it had "sufficient cash for at least the next 24 months," including for product development and trials. *Id.* ¶¶ 47-49; Forte Compl. ¶ 88.

On August 26, 2022, concerned by Forte's cash burn and dilutive offering, Camac served a books and record demand on Forte under Delaware law seeking certain of its records, only some of which Forte produced and in heavily redacted form. Del. Compl. ¶¶ 55. In light of Forte's deficient production, Camac filed a complaint in Delaware Chancery Court on November 23, 2022 to enforce its demand. *Id.* ¶ 62. In the interim, the Board continued to take defensive actions, including by appointing an additional Class II director who was not nominated by shareholders and implementing generous severance packages for Forte's officers, triggered by a change in control, to disincentivize potential acquirors. *Id.* ¶¶ 58-59.

### C. To Avoid Losing Two Seats In The 2023 Director Election, Forte Floods The Market With New Shares

In February 2023, in advance of Forte's annual stockholder meeting (the "Annual Meeting"), at which two incumbent directors, including Forte's CEO, would stand for reelection, the Board announced it would increase its size yet again, unilaterally appointing an individual with a 20-plus year relationship with Forte's CEO. Del. Compl. ¶¶ 64-65. Shortly thereafter, on February 17, 2023, Camac gave notice of its nomination of Defendants Hacke and McIntyre (the

"Camac Nominees") to stand for election to the Board at the Annual Meeting. *Id.* ¶ 67; *see also* Forte Compl. ¶ 97.

On May 15, 2023, Forte announced its Q1 2023 results, reaffirming its belief that it had sufficient cash available to operate and meet capital expenditures for at least the next 12 months. Del. Compl. ¶ 75. Camac continued to campaign for its Nominees and set forth in public filings its arguments with respect to management's track record of value destruction, disregard for stockholder interests, and the need for change at Forte. *Id.* ¶¶ 76-77.[8] Although Forte's prior annual meeting was held in June, the Board did not announce the 2023 Annual Meeting for June or July (in violation of Delaware law, which requires annual shareholder meetings to be held within 13 months of the prior meeting). *Id.* ¶ 78. Rather, on June 26, 2023, the Board announced a delayed date for the Annual Meeting of September 19, 2023, and also disclosed that it had renewed and extended the poison pill. *Id.* ¶¶ 80-81.

On August 1, 2023, stockholders learned why the Annual Meeting had been unlawfully delayed: the Board had used the extra time to orchestrate a mammoth private securities transaction that would issue 15.2 million *new shares*—71% of then-outstanding common stock—to a select group of institutional investors and members of Forte's management. *Id.* ¶ 82. The offering made limited if any business sense because Forte sold the shares at a price reflecting a substantial discount to Forte's net cash at the time. *Id.* ¶¶ 84-91. But it worked to flip the anticipated results of the director election in favor of the incumbent directors by heavily diluting all unaffiliated stockholders. *Id.* ¶¶ 93-96.

---

[8] Forte never raised a purported "undisclosed" group or other inaccuracies or deficiencies until this litigation, despite that no facts have changed since the shareholder vote.

**D.    Camac Sues For Breaches Of Fiduciary
Duty In Connection With The Director Election**

On August 10, 2023, Camac filed the Delaware Litigation in the Delaware Court of Chancery alleging, among other things, that the eleventh-hour private offering constituted unlawful entrenchment and a breach of the Board's fiduciary duties. Del. Compl. *Id.* ¶ 102; *see also* Forte Compl. ¶ 109.

In the interim, Camac continued to campaign, and on August 23, 2023, filed a joint proxy statement with ATG soliciting votes in favor of the Camac Nominees. Forte Compl. ¶¶ 110-13. However, the newly issued shares were too much to overcome—of the 36.2 million shares allowed to vote, 15.2 million (or 42%) had been issued in the private offering. Del. Compl. ¶ 112. On September 20, 2023, Forte announced that the incumbent directors had been reelected. *Id.* ¶ 116. The final results demonstrated that, but for the private offering, the Camac Nominees would have won by a landslide. *Id.* ¶ 115.

The Delaware Litigation is continuing and briefing on defendants' motion to dismiss will be complete by February 8, 2024. The Delaware court has scheduled oral argument for February 14, 2024.

**E.    Forte Retaliates By Filing This Action**

On October 26, 2023—three days after Camac filed its amended complaint in the Delaware Litigation—Forte filed this action. ECF 1. Forte bases its Complaint on purported disclosure deficiencies, including a purported "Wolfpack conspiracy" (fabricated by Forte with no actual factual allegations in support) and various other immaterial points and statements of opinion made by Defendants during the contested election. Forte notably never made such allegations in its proxy materials during the election, and now belatedly complains about trumped-up deficiencies even though the election is over and (pending a ruling in the Delaware Litigation) the incumbent

directors retained their seats. Rather than support its actual claims, Forte's Complaint brandishes the purported credentials of a management team that has indisputably caused tremendous losses to investors in recent years (Forte Compl. ¶¶ 49-53), tries to explain away the Company's poor performance (*id.* ¶¶ 54-63, 85-96), criticizes its *largest shareholders* for operating investment funds that seek to enhance shareholder value (*id.* ¶ 68), and attempts to defend the propriety of the incumbent Board. (*id.* ¶¶ 116-56).

Indeed, the Company's own allegations and the attachments to its Complaint demonstrate that its claims are baseless because Defendants repeatedly and fully disclosed—via hundreds of pages of Schedule 13D and Schedule 14A filings—their holdings and intent, including their disagreement with the Company's current strategy. *See id.* ¶ 112; Exhibits A-J.

### F.    Defendants Supplement Their Filings To Disclose This Litigation

On January 5, 2024, Defendants Camac, ATG, Hacke and McIntyre jointly filed an amended Schedule 13D to disclose the allegations in this action. Slifer Dec.[9] Ex. 1. The filing attached a copy of the Complaint and stated, in relevant part:

> On October 28, 2023, the Issuer [Forte] filed an action against the Reporting Persons and certain other defendants in the U.S. District Court for the Northern District of Texas (the "Texas Action"). The Texas Action alleges, among other things, that the Reporting Persons and other defendants were allegedly part of an undisclosed group formed to advocate for liquidation and/or other change of the Issuer. The Texas Action asserts purported (i) violations Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder; (ii) violations of Section 13(d) of the Exchange Act; and (iii) tortious interference. The foregoing description of the Texas Action is qualified in its entirety by reference to the Complaint, which is attached in its entirety as Exhibit 99.3 hereto and incorporated by reference herein.
>
> . . . .
>
> The Reporting Persons believe the allegations set forth in the Texas Action are baseless, without merit and subject to immediate dismissal. This filing is being

---

[9] Declaration of LeElle B. Slider In Support Of Defendants' Motion To Dismiss ("Slifer Dec.").

made solely to moot the Issuer's claims in the Texas Action relating to alleged disclosures and omissions. None of the foregoing shall be deemed an admission of the existence or materiality of any purported misstatement or omission complained of in the Texas Action. To the contrary, the Reporting Persons specifically deny all allegations in the Texas Action, including, without limitation, that any additional disclosures were or are required as to any of the defendants in the Texas Action. The Reporting Persons intend to defend themselves vigorously and will pursue all available rights and remedies.

On January 9, 2024 and January 10, 2024, respectively, Defendants Funicular and BML filed materially similar amendments to their Schedule 13D filings, disclosing this litigation, the Complaint and Forte's allegations. Morris Dec. Exs. 2 & 3.

## ARGUMENT

## I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL SECURITIES LAW

Plaintiff asserts three claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "Exchange Act"): one under § 14(a), 15 U.S.C. § 78n(a), and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9 (Count I); and two under § 13(d), 15 U.S.C. § 78m(d) (Counts II and III).

Section 14(a) prohibits the solicitation of proxies from shareholders of a publicly traded company without complying with the rules enacted by the SEC. 15 U.S.C. § 78n(a). SEC Rule 14a-9 prohibits the use of proxy statements and other proxy-related communications "containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

Section 13(d) requires that any person who acquires more than 5% beneficial ownership of a public company must make a filing with the SEC, known as Schedule 13D, disclosing certain information. *See* 15 U.S.C. § 78m(d). Among other things, the 13D filer must provide information about their background and identity; the number of shares they have purchased; the source of funds

used for the purchases; and if they seek to gain control of the company, any plans they have to make "major changes" to its business or structure, such as a merger, liquidation, or sale of assets. *See id.*

Both §§ 14(a) and 13(d) were added to the Exchange Act as part of the Williams Act, which was enacted by Congress in 1968. The Williams Act addresses contests for control over public companies, such as tender offers and proxy fights, and was intended to fill "a gap in the federal securities laws which permitted cash tender offers and other acquisitions without adequate disclosure of information to investors." *Motient Corp. v. Dondero*, 529 F.3d 532, 535-36 (5th Cir. 2008). The statute was designed to ensure "full and fair disclosure for the benefit of investors while at the same time providing the offeror and management equal opportunity to present their case." *Liberty Nat'l Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 566 (11th Cir. 1984) (quotations omitted). Congress was careful "not to tip the scales in favor of management or its opponents." *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 713 (5th Cir. 1984). Rather, it intended to remain "evenhanded" in any contest for corporate control. *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 621 (2d Cir. 2002). To that end, Congress expressly cautioned that it did not intend the statute to become "a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975).

### A.     Plaintiff's Williams Act Claims Do Not Present A Justiciable Case Or Controversy As Required For Subject Matter Jurisdiction

"The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language," which limits the subject matter jurisdiction of federal courts to decide only actual "Cases" and "Controversies." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2023) (quoting *DaimlerChrysler Corp. v. Cuno*,

11

547 U.S. 332, 352 (2006)); *see also* U.S. Const. art. III, § 2. Here, Plaintiff does not have standing to assert claims for damages under §§ 14(a) or 13(d), and their claims for declaratory and injunctive relief are moot in view of post-filing disclosures made by Defendants. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's federal securities claims, and those claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### 1.    Plaintiff Does Not Have Standing Under § 14(a)

Forte, as a corporate issuer, does not have standing to assert a claim for damages pursuant to § 14(a). Any such claim may be asserted only by shareholders eligible to vote on the matters in dispute.

Although Section 14 does not expressly establish a private right of action to enforce the statute, the Supreme Court has recognized a limited right of action on the part of shareholders— but not corporate issuers—for damages where a proxy is misleading. *See J.I. Case Co. v. Borak*, 377 U.S. 426, 430-31 (1964). The Court grounded this implied right of action on the part of shareholders in legislative history demonstrating that Congress's purpose in enacting the statute was "protection of investors," ensuring "[f]air corporate suffrage," and "preventing the recurrence of abuses which . . . [had] frustrated the free exercise of the voting rights of stockholders." *Id.* at 431 (alterations in original).[10] Reinforcing its roots in protecting the shareholder franchise, the Supreme Court later refused to extend the implied right of action to minority shareholders whose

---

[10] After *Borak*, the Supreme Court adopted more rigorous standards for finding implied private rights of action under federal statutes, and although the right for shareholders to enforce § 14(a) has not been eliminated, it is questionable whether the Court would have recognized it under more modern standards. *See Alexander v. Sandoval*, 525 U.S. 275, 287 (2001) (describing *Borak*'s approach to implied rights as "the *ancient regime*," which had been "abandoned" and not applied in later cases "even when interpreting the same [statute]"); *see also Hallwood*, 286 F.3d at 618-19 (observing that "[o]ver the years, the Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor," and tracing development of implied rights standards from *Borak* through *Sandoval*).

votes were not required for the corporate action being challenged, *see Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1106-08 (1991), and the Fifth Circuit held that owners of MLP securities who did not have voting rights lacked standing to bring an action under the statute. *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 230 (5th Cir. 1994) ("We cannot believe the Supreme Court, in finding a private right of action under section 14(a) . . . intended to open a Pandora's box by extending that right to any person potentially injured by a proxy statement.") (citations omitted).

In view of the statute's focus on protecting shareholder voting rights and case law, this Court has previously held that a corporate issuer does not have standing to bring a claim under § 14 against a third party for filing an allegedly false and misleading proxy statement in connection with a fight for control over the issuer. *See Ashford Hospitality*, 2017 WL 2955366, at *9 (Godbey, J). This Court reasoned that "section 14(a) . . . protect[s] only interest-holders with voting rights," and the corporate issuer lacks standing because it has "no voting rights in its own stock." *Id.* (quotations omitted); *accord Tenet Healthcare*, 839 F. Supp. 2d at 871-72 (corporate issuer lacks standing to bring § 14 claims to recover costs of investigating third-party proxy).

It is only logical to reject a right of action on the part of corporate issuers given the statute's purpose. Holding otherwise would permit issuers—like the Plaintiff here—to weaponize § 14 in retaliation against shareholders or third parties seeking to replace management or proposing a different strategic direction for the company (precisely what Forte is attempting to do), contrary to the express purposes of the Williams Act. As the Second Circuit explained in *Liberty National*:

> When an outsider is perceived as threatening to displace the insiders, management has a clear economic interest in protecting its position, even though this might not be in the economic interest of the firm or its shareholders. The creation of a private right of action on behalf of the firm would allow incumbent management to use corporate

> resources, rather than their own, to harass and burden aggressive outsiders.

734 F.2d at 566-67; *see also Hallwood*, 286 F.3d at 620 (holding that damages remedy for issuers under Williams Act would frustrate the purpose of the statute by tipping the scale in favor of management); *Vestcom Int'l v. Chopra*, 114 F. Supp. 2d 292, 300 (D.N.J. 2000) ("The Court need not ignore the possibility that a Williams Act lawsuit might be brought merely for its chilling effect on challenges to incumbent management.").

Here, the § 14 claim is brought by Forte as the corporate issuer, not an unaffiliated shareholder. While Forte attempts to tie the claim to potential harm to shareholders entitled to exercise their voting rights, no such shareholder is a plaintiff in this action. *See* ¶¶ 168-69 (alleging the "false and misleading statements . . . would have significantly altered the total mix of information available to a reasonable stockholder in deciding how to vote" and "will harm Forte stockholders' ability to make fully informed decisions"). Because Forte is not alleged to be a shareholder and has no voting rights, it lacks standing to assert a § 14 claim, and the claim must be dismissed. *See Ashford Hospitality*, 2017 WL 2955366, at *9.[11]

### 2.   Plaintiff Also Lacks Standing Under § 13(d)

Like § 14(a), Congress enacted § 13(d) to protect unaffiliated shareholders, not corporate issuers. *See Motient*, 529 F.3d at 536. And, as with § 14, this Court (along with the Fifth Circuit

---

[11] Courts have recognized limited standing for a corporate issuer to bring an action pursuant to § 14(a) for declaratory judgment that it may exclude a shareholder's proposal from the issuer's proxy statement. *See KBR Inc. v. Chevedden*, 776 F. Supp. 2d 415, 426-27 (S.D. Tex. 2011). But that doctrine has no application here, as Forte does not seek declaratory judgment as to what information does or does not need to be included in its own proxy statement, and instead, seeks declaratory judgment that Defendants' proxy materials were false and misleading to Forte shareholders. *See Ashford Hospitality*, 2017 WL 2955366, at *9; *Tenet Healthcare*, 839 F. Supp. 2d at 872. In any event, the vote has passed and Forte's claim for declaratory judgment or injunctive relief is moot, as discussed below.

and other Courts of Appeals) has held that a corporate issuer does not have standing to assert a claim for damages pursuant to § 13(d), although a corporate issuer may obtain injunctive relief under the statute. *See Ashford Hospitality*, 2017 WL 2955366, at *8 ("[M]oney damages are unavailable under § 13(d)." (citing *Motient*, 529 F.3d. at 536)); *accord Hallwood*, 286 F.3d at 619-21 (right of action for damages "does not serve the aim [and] may actually *frustrate* congressional purposes") (emphasis in original); *Liberty Nat'l*, 734 F.2d at 560-67 (corrective filing is only relief available to issuer under § 13(d)).[12]

Accordingly, Forte's claims for damages under § 13(d) brought solely in its capacity as a corporate issuer must be dismissed for lack of standing.

## B.    Plaintiff's Claims For Declaratory And Injunctive Relief Are Moot

Even if Plaintiff had standing to assert its Williams Act claims (it does not) the claims are moot in any event and should be dismissed. "Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Motient*, 529 F.3d at 537 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 (1997)). "[A] case is moot when the parties lack a legally cognizable interest in the outcome. Thus, whether the vindication of a party's legal position will lead to effective relief is a key indicator of an ongoing live, controversy." *Vestcom*, 114 F. Supp. 2d at 296 (cleaned up).

"The *sole* purpose of the Williams Act is full and fair disclosure to investors." *Gearhart*, 741 F.2d at 715 (emphasis in original). Where a defendant makes a supplemental, "curative" disclosure providing shareholders with the information allegedly omitted from its initial filing, the

---

[12] Further, it is not clear under case law that the declaratory relief Forte seeks in its prayer for relief is even available (Forte Compl. at 41), nor is it clear exactly what Forte is even asking for or to what end, given that the vote has passed. In any event, the claims are now moot as discussed below.

purpose of the statute has been fulfilled, and any claim for declaratory and injunctive relief is moot. *See id.; see also Treadway Cos., Inc. v. Care Corp.*, 638 F.2d 357, 380 (2d Cir. 1980) (denying injunctive relief following curative disclosure because shareholder-protection "interests are fully satisfied when the shareholders receive the information required to be filed"); *Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*, No. 18 Civ. 4201, 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019) ("[T]he interests of § 13(d) are fully satisfied when the shareholders receive the information required to be filed.") (quotations omitted); *cf. Liberty Nat'l*, 734 F.2d at 565 ("[T]he obvious antidote for an allegedly false filing is a corrected filing.").

A commonly utilized and accepted form of corrective disclosure is for defendants to attach a copy of the complaint alleging Williams Act violations to a supplemental SEC filing. More than 40 years ago, the court in *Avnet, Inc. v. Scope Industries* held that such disclosure was sufficient to moot a § 13(d) claim, even if defendants state in the supplemental disclosure that they disagree with and intend to contest the complaint's allegations. 499 F. Supp. 1121, 1127 (S.D.N.Y. 1980). Drawing upon analogous disclosure-based statutes, the court reasoned that "[t]he only regulatory objective is that access to material information be enjoyed equally, but this objective requires nothing more than the disclosure of basic facts so that [investors] may draw upon their own evaluative expertise in reaching their own investment decisions." *Id.* at 1125. The court held that a supplemental disclosure attaching a copy of the complaint detailing the information allegedly omitted, while stating defendants' disagreement with those allegations, satisfied this purpose because it informed shareholders of "the disputed facts and the possible outcomes," and that is "the limit of the law unless there is reason to be believe the facts are not genuinely in dispute." *Id.* at 1125-26.

Subsequent courts have "overwhelmingly followed the lead" of *Avnet* and dismissed Williams Act claims where defendants made a supplemental disclosure attaching a copy of the complaint. *Ocean Capital,* 2023 WL 5835786, at *8 (collecting cases) (Magistrate's report and recommendation). For example, the court in *Nano Dimension* recently held that "an amended Schedule 13D that annexes the complaint, explains the issuer's allegations, and refutes those allegations, is sufficient" to moot a disclosure claim because it "provid[es] members of the public the opportunity to assess the information themselves," and "Section 13(d) requires no more." 2023 WL 4422788, at *10-11; *see also, e.g.*, *Ocean Capital*, 2023 WL 5835786, at *9; *Land & Buildings Inv. Mgmt., LLC v. Taubman Centers, Inc.*, No. 17-11576, 2017 WL 3499900, at *3 (E.D. Mich. Aug. 16, 2017); *Lions Gate Entertainment Corp. v. Icahn*, No. 10 CV 08169, 2011 WL 1217245, at *1 (S.D.N.Y. Mar. 30, 2011); *Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, No. 09 Civ. 8262, 2010 WL 2835548, at *9-10 (S.D.N.Y. July 13, 2010); *Forgent Networks, Inc. v. Sandberg*, No. A-09-CA-499, 2009 WL 2927015, at *2 (W.D. Tex. Aug. 27, 2009); *Vestcom*, 114 F. Supp. 2d at 300; *Weeden v. Continental Health Affiliates, Inc.*, 713 F. Supp. 396, 399-400 (N.D. Ga. 1989); *Cendec Corp. v. Farley*, 573 F. Supp. 1382, 1384, 1386 (S.D.N.Y. 1983).

Here, Defendants made precisely that corrective disclosure. On January 5, 9 and 10, Defendants each issued amended Schedule 13Ds that annexed complete copies of Plaintiff's Complaint. Defendants stated that they deny and dispute Plaintiff's allegations, but the allegations themselves are now fully disclosed to Forte shareholders.[13] As such, there is no basis to compel

---

[13] To be clear, a defendant need not accept disputed allegations, but need only disclose the complaint and allegations to investors. *See, e.g., Ocean Capital*, 2023 WL 5835786, at *9 ("Defendants have provided shareholders of each fund a summary of Plaintiffs' allegations. And have informed shareholders that they dispute the existence of a group or of additional Section 13(d) reporting obligations. Admission of liability is not required."); *Nano Dimension*, 2023 WL 4422788, at *11 ("[Defendants] have made successive amendments disclosing Plaintiff's claims

any further disclosure, because all material information, as identified and articulated by Plaintiff, has been disclosed, nor would any purpose be served by a declaratory judgment opining on the accuracy of any prior disclosures, which have been superseded and mooted. *See Vestcom*, 141 F. Supp. 2d at 299 ("[W]here the informative purpose of section 13(d) is served, further controversy over the alleged violations is moot."). Thus, Plaintiff's claims under §§ 13(d) and 14(a) must be dismissed.

### C.    The Complaint Fails To State A Claim Under The Williams Act

Even if Plaintiff had standing under the Williams Act and its claims were not moot, the claims still should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff does not allege facts establishing a plausible claim under §§ 13(d) or 14(a).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's factual allegations must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent' with a defendant's liability." *Iqbal*, 556 U.S. at 678.

In evaluating the sufficiency of a complaint, a court must accept well-pleaded factual allegations, but it need not credit "conclusory allegations, unwarranted factual inferences, or legal

---

and their good faith dispute of those claims. Section 13(d) requires no more in this case."); *Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 494 (S.D.N.Y. 2014) (dismissing case in light of disclosures and holding that "a party is not required to admit allegations in a Schedule 13D that it disputes in good faith").

conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). In addition to the complaint's allegations, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Communications Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Ashford Hospitality*, 2017 WL 2955366, at *3.

In this case, Plaintiff's claims also must satisfy the more stringent pleading standards of Rule 9(b) and the "PSLRA," 15 U.S.C. § 78u-4(b). *See Ashford Hospitality*, 2017 WL 2955366, at *3; *Taro*, 2010 WL 2835548, at *6-7. Where a complaint asserts a claim under the Exchange Act based on allegedly false or misleading statements, the PSLRA requires that "[t]he complaint shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Moreover, if any such allegation is made on information and belief, "the complaint shall state with particularity all facts upon which that belief is formed." *Id.*

Rule 9(b) similarly requires that a plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the complaint must: "(1) specify the statements the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," *Taro*, 2010 WL 2835548, at *7 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

### 1. Plaintiff Fails To Allege Facts Establishing Defendants' Proxy Statement Was Materially False Or Misleading As Required by § 14(a)

To state a claim under § 14(a) and Rule 14a-9, "a plaintiff must show that '(1) defendants misrepresented or omitted a material fact in a proxy statement . . . ; (2) defendants acted at least

negligently in distributing the proxy statement . . . ; and (3) the false or misleading proxy statement was an essential link in causing the [loss-generating] corporate actions.'" *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 339 (N.D. Tex. 2008). An omitted fact or misrepresentation in a proxy statement is material only where there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Plaintiff challenges six categories of purportedly misleading statements, but it fails to allege facts supporting a plausible inference that any were false or misleading, much less materially so.

**Defendants' Investment Objectives.** Defendants satisfied § 14(a) by disclosing the material facts regarding their objectives for the Company, and they were "not required to disclose their motivations for waging the proxy contest or to recount the evolution of their strategy." *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millenium Partners, L.P.*, 260 F. Supp. 2d 616, 635 (S.D.N.Y. 2003). In any event, Plaintiff has failed to allege any facts suggesting Defendants' statements did not reflect their "good faith belief[s]." *Id.* at 635-36.

Plaintiff's contention that Defendants made false or misleading statements "regarding their true plans for Forte" (¶ 116) is belied by Defendants' consistent statements over the course of a year that they intended to return capital to shareholders. *See* [Ex. H] (Aug. 17, 2022 press release stating "the Board should consider how to return capital to the Company's long-suffering shareholders"); [Ex. A] at 8 (May 25, 2023 preliminary proxy stating "a vote for [Camac's] candidates is a vote for abandoning the current plan and returning capital to shareholders"); [Ex. C] (Aug. 24, 2023 definitive proxy stating "we have previously advocated for an immediate return of capital, and that need is now urgent"). Indeed, Plaintiff expressly alleges that Defendants

20

disclosed liquidation as a potential method of accomplishing a return of capital. Forte Compl. ¶¶ 29, 44, 72, 77 & 79.

Plaintiff claims that Defendants misleadingly stated that they were "not demanding liquidation," while purportedly demanding liquidation. The claim is illogical on its face, and Plaintiff does not allege facts demonstrating that Defendants were committed *only* to liquidation or were not willing to consider other methods of returning capital. *Id.* ¶¶ 117-18. To the contrary, although Defendants clearly disclosed the possibility of a liquidation, they also expressed support for "a tender offer or other extraordinary transaction" to provide a return of capital. *See, e.g., id.* ¶ 37. And while Plaintiff contends that the amount of capital Defendants sought to be returned would necessitate a liquidation, Defendants' public statements informed shareholders of the size of the transaction they sought, enabling shareholders to evaluate the implications, if any, for the Company. *Id.* ¶¶ 37, 73 (calling for "return [of] $20 million"). *See Potomac Capital Mkts. Corp. v. Prudential-Bache Corp. Div. Fund, Inc.*, 726 F. Supp. 87, 91-92 (S.D.N.Y. 1989) (dismissing proxy misrepresentation claim where "there was sufficient notification in light of the alleged circumstances" that liquidation was a possibility).

**Settlement Discussions Between Forte's and Camac's Counsel.** Plaintiff alleges that the "[p]roxy falsely recounted such confidential settlement discussions, which occurred shortly after the Camac Nominees were nominated," including that "the Company's counsel relayed that if Dr. Wagner was not reelected at the Annual Meeting, the Board planned to immediately reappoint him as a director following the meeting." Forte Compl. ¶¶ 129-32. However, notably, in internal notes that were inadvertently not removed, Plaintiff admits that Forte's counsel advised Camac's counsel that Dr. Wagner would be reappointed to the Board, even if shareholders voted to remove him. *Id.* ¶ 133. By "speaking hypothetically" and "theorizing how it would play out," *id.*, Forte's counsel

laid out the Company's plan, which included reappointing Dr. Wagner against the wishes of shareholders. That fact was stated accurately in Camac's proxy statement, Plaintiff does not deny it, and whether counsel now regrets their statements does not render it misleading in any way.

**Dr. Wagner's Belief in Forte's Long-Term Viability.** Defendants' statement that they "question how much Dr. Wagner believes in the long-term viability of Forte" is a classic statement of opinion, reflecting Defendants' views based on their assessment of, among other things, Dr. Wagner's sales of company stock "in recent years." Because Plaintiff does not allege any facts suggesting Defendants did not honestly hold that opinion, it cannot be the basis for a misrepresentation claim. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether [plaintiff] can ultimately prove the belief wrong."); *Virginia Bankshares*, 501 U.S. at 1095 ("A statement of belief may be open to objection . . . solely as a misstatement of the psychological fact of the speaker's belief in what he says.").

Moreover, the statement that Dr. Wagner "has been an active seller in recent years" is not false, as the Complaint admits that he sold more than $4 million of his personal holdings of Forte stock in September 2021. Forte Compl. ¶ 135. That Dr. Wagner also made some, significantly smaller, purchases of Forte stock since September 2021 does not negate the fact that he actively sold shares in that time period. *Id.* ¶ 138 (alleging Dr. Wagner and other executives and directors collectively purchased $1.16 million in stock through a private placement in 2023). In any event, any purchases made by Dr. Wagner (as well as changes in his compensation, *id.* ¶ 139) are publicly reported and part of the total mix of information available to shareholders, were disclosed prior to Defendants' statements, and Defendants were not required to separately re-disclose them in their proxy statement. *See In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989) (no

22

duty to disclose information "that has been made credibly available to the market by other sources"). As above, Plaintiff's mere disagreement with Defendants' assessment does not render the opinion a securities violation.

**Decline of Forte's Stock Price Since Its IPO.** Defendants' proxy materials highlighted the 99% decline in Forte's stock price since its IPO and the more than $102 million in accumulated losses since its inception. Plaintiff does not dispute the accuracy of these figures. Instead, Plaintiff argues those figures are not relevant to the performance of the current members' Board because they include losses incurred before certain individuals joined the Board. However, Defendants' proxy statement clearly identified the time period covered by the cited data and asserted only that the losses were incurred "[u]nder Chair and CEO Dr. Wagner," who unquestionably has been an officer and Board member since the Company's inception. Forte Compl. ¶¶ 49-50. Thus, Defendants' statements were neither false nor misleading, and the Company's financial performance and Board tenure are matters of public record. To the extent Forte's management believes the consistent accumulated losses are somehow not relevant to their performance, they were free to make their case to shareholders, but they cannot use the Williams Act to silence dissenting viewpoints.[14] *See Liberty Nat'l*, 734 F.2d at 566 (statute intended to "provid[e] the offeror and management equal opportunity to present their case") (quotations omitted).

**Meetings with Investors.** Plaintiff alleges that Defendants "mischaracterize[d] Forte's willingness to meet with investors" because Forte "has met with investors . . . including [Cable Car]." Forte Compl. ¶ 148 (brackets in original). Contrary to Plaintiff's suggestion, however, Defendants are not alleged to have stated that Forte *never* met with *any* investors. Quite the

---

[14] It bears noting, however, that significant stock price declines have occurred since June 2020, with Forte's share price dropping from more than $50 to less than $1 during the current Board's tenure. *See* Forte Compl. Ex. D at 11.

opposite, Defendants' proxy specifically discussed meetings between Camac's counsel and Forte's counsel. *Id.* ¶ 149; *see also* Ex. C at 7.

While Defendants informed shareholders that Forte's Board "[f]ail[ed] to constructively engage" in those meetings, that is, again, a statement of opinion and is not actionable. *See Virginia Bankshares*, 501 U.S. at 1095. And while Defendants stated that they had been told by "numerous significant stockholders" that "management ha[d] been unwilling to speak with them," Forte Compl. ¶ 146, Plaintiff does not allege that Defendants were not so informed. Plaintiff's argument that it met with at least *one* shareholder during the prior year does not, as a matter of common sense, establish that Defendants' statements were false or misleading. Camac, by way of example, has repeatedly offered to speak about Forte's strategy and management has been unwilling.

**<u>Resignation of the Company's Auditor.</u>** Plaintiff's own allegations demonstrate that the Company's auditor, Mayer Hoffman McCann P.C. ("MHM"), concurred with the determination that the Company had ineffective tax accounting controls. MHM was required to, and did, approve the initial disclosure of that deficiency in the Company's Form 10-K for the fiscal year ended December 31, 2022, which was filed on March 31, 2023. Forte Compl. ¶ 154. Moreover, the Form 8-K announcing MHM's resignation less than six months later, which was reviewed and approved by MHM, disclosed that there were "no . . . reportable events . . . *other than in connection with* [the disclosed deficiency]," suggesting MHM viewed the ineffective tax accounting controls as a material matter that was required to be reported to shareholders. *Id.* ¶¶ 154-55 (emphasis added). Thus, Defendants' statements that MHM had resigned and that the Company had ineffective controls were true by Plaintiff's own admission.

Whether MHM independently identified the deficiency or agreed with management's conclusions does not materially impact the total mix of information available to shareholders.

Indeed, both the 10-K announcing the deficiency and the 8-K announcing MHM's resignation were publicly disclosed prior to the September 2023 meeting, so shareholders had access to what Plaintiff contends were the true facts regarding the control deficiency and the reasons for MHM's resignation before they voted.

### 2. Plaintiff Fails To Allege Facts Establishing Defendants Entered An Agreement To Act As A Group As Required By § 13(d)

The "key inquiry" under § 13(d) is "whether [Defendants] agreed to act together for the purpose of acquiring, holding, voting or disposing of [the issuer's] common stock." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 122 (2d Cir. 2011) (quoting SEC Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1)). Although whether the requisite agreement exists is a question of fact, to survive a motion to dismiss, "[a] plaintiff alleging a 'group' must plead enough factual matter (taken as true) to suggest an agreement was made." *Nano Dimension*, 2023 WL 4422788, at *8 (quotations omitted); *Ocean Capital*, 2023 WL 5835786, at *4.

Here, Plaintiff concedes that Camac, the Camac Nominees, McIntyre, and ATG properly filed Schedule 13Ds disclosing that they were acting as a group prior to the Annual Meeting, *see* Forte Compl. ¶¶ 98, 103, 111, but Forte does not—and cannot—allege any facts establishing a plausible inference that any of those Defendants had an agreement with Funicular or BML with respect to Forte or its stock because no such agreement ever existed.

Rather, Plaintiff alleges (at the very most) that Funicular and BML purchased Forte shares in the same general timeframe as the other Defendants and that they shared, to some extent, similar views regarding management's misguided business strategies, efforts to entrench itself and failure to maximize value for shareholders.[15] *See, e.g.*, *id.* ¶¶ 73-74, 76, 79, 81. Plaintiff also alleges that

---

[15] None of this is surprising given that every investor in the Company, whether or not acquainted, share an interest in maximizing shareholder value and avoiding poor performance.

Funicular and BML publicly supported proposals made by the other Defendants and vice versa, *see id.* ¶¶ 81, 127, but they do not allege a single fact suggesting that such support arose from an undisclosed agreement amongst Defendants, rather than from Defendants' common, but independently established, views regarding the Company and its management. *See Nano Dimension*, 2023 WL 4422788, at *8 ("parallel investment decisions" insufficient absent allegation defendants "expressly agreed to act together") (quotations omitted); *Ocean Capital*, 2023 WL 5835786, at *7 (dismissing claim where plaintiff failed to provide "any concrete factual material to establish a connection between [members of the alleged group]").

Moreover, Plaintiff's allegations are based entirely on Defendants' public statements and acts prior to the September 2023 Annual Meeting. Thus, Forte shareholders were well aware that Defendants shared similar views, even though Funicular and BML were not identified as part of a § 13(d) "group" with the other Defendants (because they were not). Defendants were not required to pejoratively characterize themselves as a "wolfpack" engaging in "a wolfpack strategy"—terms Plaintiff invented for this litigation—and any such disclosure would not be material to a reasonable shareholder in view of the information already disclosed. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994) (defendants have no duty to "employ the adjectorial characterization" preferred by plaintiff); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1277 (D.C. Cir. 1994) ("Since the use of a particular pejorative adjective will not alter the total mix of information available to the investing public . . . such statements are immaterial as a matter of law and cannot serve as the basis for [a federal securities claim].").

Nor does Plaintiff's allegation that Funicular previously supported a proxy contest by Camac involving a different company (and apparently fully disclosed) establish an inference that

26

Funicular and Camac have an undisclosed agreement with respect to Forte.[16] *See Forward Indus. Inc. v. Wise*, No. 14-CV-5365, 2014 WL 6901137, at *3 (S.D.N.Y. Sept. 23, 2014) ("[P]roof that defendants had jointly invested together in other transactions would not establish that they currently have an agreement with respect to [the issuer's] stock." (quotation marks omitted)).[17]

## II. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

### A. The Court Should Decline to Exercise Supplemental Jurisdiction

The Court should dismiss Plaintiff's federal claims for the reasons stated above, and should decline to exercise supplemental jurisdiction over the state law claim for tortious interference. A district court "may decline to exercise supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), or "in exceptional circumstances," 28 U.S.C. § 1367(c)(4). As a general rule, "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601-02 (5th Cir. 2009). Other relevant factors include "judicial economy, convenience, fairness, and comity." *Id.* at 602.

Here, the balance of factors weighs in favor of declining supplemental jurisdiction. Although the parties have submitted filings in connection with the instant motion to dismiss, the case is at a nascent stage. No discovery has occurred, and the initial pretrial conference has not

---

[16] Plaintiff touts Defendants' "[h]istory" of using a "wolf pack strategy" to "[r]ansack[]" companies, but Plaintiff alleges only a *single* example where Camac and Funicular (but not any of the other Defendants) were involved in a proxy contest with respect to an underperforming biotechnology company. Forte Compl. ¶¶ 64-68.

[17] Plaintiff's conclusory allegations here stand in marked contrast to the factual allegations relied upon by this Court in *Ashford Hospitality* to sustain a § 13(d) claim. *See* 2017 WL 2955366, at *8 (relying on allegations that leader of alleged group (a) had nominated one of the other members to be elected to the issuer's board and (b) had privately discussed the issuer with its limited partners (*i.e.*, investors in its funds) before they purchased shares).

taken place. More importantly, the parties are litigating similar issues in other proceedings that predate this case. The Court has no compelling reason to retain jurisdiction only to consider the tortious interference claim, which is an afterthought in Plaintiff's Complaint.

**B.**    **The Complaint Fails to State A Claim for Tortious Interference**

Even if the Court exercises supplemental jurisdiction, the tortious interference claim fails under Fed. R. Civ. P. 12(b)(6) because Forte does not allege all (or any) of the elements necessary for a claim, much less actual facts supporting them. "To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Moreover, Fed. R. Civ. P. 9(b)'s heightened pleading standard applies since Forte's claim is premised on Defendants' alleged fraudulent statements. *Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*, No. 5:15-mc-80165, 2015 WL 13469916, at *5 (N.D. Tex. Sept. 24, 2015) (Godbey, J.) (applying Rule 9(b) and dismissing tortious interference with prospective contracts claim where fraud was the alleged independent tortious conduct).

Forte has failed to allege even generalized allegations about the "necessary who, what, when, where, and how" of its claim. *Leonardo Worldwide Corp.*, 2015 WL 13469916, at *5. As to a reasonably probable "business relationship," the Complaint alleges vaguely that Forte is a public company that "routinely" seeks additional investors. Forte Compl. ¶ 196. But it fails to identify any investor who was affected by Defendants' allegedly tortious conduct, when, where or

how the conduct purportedly affected a hypothetical investor, or anything else about how the conduct purportedly affected the Company. *See, e.g.*, *Forum Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*, No. CV H-20-3768, 2022 WL 1103078, at *3 (S.D. Tex. Apr. 13, 2022) (dismissing a tortious interference with prospective business relations claim where the complaint "does not identify any of th[e] third parties" allegedly affected by the defendant's actions). If Forte cannot identify a single hypothetically deterred business relationship, it certainly cannot show such a relationship was reasonably probable or that the Company incurred actual damage or loss. *See id.*

Forte also has failed to allege independently tortious or unlawful conduct or that Defendants acted consciously or knowingly that such conduct would result in preventing any relationship from occurring. As a threshold matter, since Forte's §§ 14(a) and 13(d) claims should be dismissed, there is no independently tortious or unlawful conduct alleged. Moreover, the Complaint, in its totality, amounts to a judicially filed disagreement with the viewpoints of certain activist minority shareholders. Defendants' merited advocacy to return capital to shareholders— the only "interference" alleged—does not give rise to a cognizable claim. *See Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001) (interference that is "an incidental result of [defendant's] legitimate conduct" is insufficient). The tortious interference claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice as to all Defendants.

January 16, 2024

*/s/ LeElle B. Slifer*
**WINSTON & STRAWN LLP**
LeElle B. Slifer
2121 North Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6431
lslifer@winston.com

**MORRIS KANDINOV LLP**
Aaron T. Morris (*pro hac* forthcoming)
Andrew W. Robertson (*pro hac* forthcoming)
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

*Attorneys for Defendants Camac Fund, LP, Camac Partners, LLC, Camac Capital, LLC, Eric Shahinian, Michael G. Hacke, Chris McIntyre, McIntyre Partnerships, LP, McIntyre Capital GP, LLC, McIntyre Capital Management, LP, McIntyre Capital Management GP, LLC, ATG Fund II LLC, ATG Capital Management, LLC and Gabriel Gliksberg*

**BURNS CHAREST LLP**
Daniel Charest
900 Jackson Street, Suite 500
Dallas, Texas 75202
(469) 904-4555
dcharest@burnscharest.com

*Attorneys for Defendants Funicular Funds, LP, The Funicular Fund, LP, Cable Car Capital LLC and Jacob Ma-Weaver*

**GLAST, PHILLIPS AND MURRAY, PC**
Greg Weselka (00788644)
14801 Quorum Drive, Suite 500
Dallas TX 75254
(972) 419-8341
gweselka@gpm-law.com

*Attorneys for Defendants BML Investment Partners, L.P., BML Capital Management, LLC and Braden M. Leonard*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of this document was forwarded to all counsel of record through the Court's CM/ECF System on January 16, 2024.

By: <u>/s/ *LeElle B. Slifer*</u>
LeElle B. Slifer

32