UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FORTE BIOSCIENCES, INC., a Delaware corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:23-cv-02399-DCG |
| CAMAC FUND, LP, a Delaware limited partnership; CAMAC PARTNERS, LLC, a Delaware limited liability company; CAMAC CAPITAL, LLC, a Delaware limited liability company; ERIC SHAHINIAN; MICHAEL G. HACKE; CHRIS MCINTYRE; MCINTYRE PARTNERSHIPS, LP, a Delaware limited partnership; MCINTYRE CAPITAL GP, LLC, a Delaware limited liability company; MCINTYRE CAPITAL MANAGEMENT, LP, a Delaware limited partnership; MCINTYRE CAPITAL MANAGEMENT GP, LLC, a Delaware limited liability company; ATG FUND II LLC, a Delaware limited liability company; ATG CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; GABRIEL GLIKSBERG; FUNICULAR FUNDS, LP, a Delaware limited partnership; THE FUNICULAR FUND, LP, a Delaware limited partnership; CABLE CAR CAPITAL LLC, a California limited liability company; JACOB MA-WEAVER; BML INVESTMENT PARTNERS, L.P., a Delaware limited partnership; BML CAPITAL MANAGEMENT, LLC, an Indiana limited liability company; and BRADEN M. LEONARD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants, | ) ) ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, Forte Biosciences, Inc. ("Forte") respectfully submits this Response to Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion" or "Mot.") against defendants Camac Fund, LP; Camac Partners, LLC; Camac Capital, LLC; Eric Shahinian (collectively, "Camac"); Michael G. Hacke ("Hacke"); Chris McIntyre; McIntyre Partnerships, LP; McIntyre

Capital GP, LLC; McIntyre Capital Management, LP; McIntyre Capital Management GP, LLC (collectively, "McIntyre"); ATG Fund II LLC; ATG Capital Management, LLC; Gabriel Gliksberg (collectively, "ATG"); Funicular Funds, LP; The Funicular Fund, LP; Cable Car Capital LLC; Jacob Ma-Weaver (collectively, "Funicular"); BML Investment Partners, L.P.; BML Capital Management, LLC; and Braden M. Leonard (collectively, "BML" and collectively along with the other defendants herein, the "Defendants").

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION………………………………………………………………………...1

II.   ARGUMENT & AUTHORITIES…………………………………………………...2

   A.   Forte has standing to bring Section 14(a) and Section 13(d) claims
        under the Exchange Act………………………………………………………...3

        i.    Forte has standing to sue for damages under Section 14(a)
              of the Exchange Act for violations of Rule 14a-9………………………...3

        ii.   Forte has standing to bring an action against Defendants
              for failure to comply with Section 13(d) of the Exchange Act……………7

   B.   Forte's Section 14(a) and Section 13(d) claims are not moot simply
        because Defendants filed amended disclosures attaching Forte's
        Original Complaint……………………………………………………………..8

   C.   Forte's Amended Complaint satisfies the heightened pleading
        requirements of the PSLRA and Rule 9(b)……………………………………11

        i.    Forte's Amended Complaint sufficiently alleges the who,
              what, when, where, and why of each of Defendants'
              misleading statements relating to its Section 14(a) claim………………..12

              1.   *Statements regarding Defendants' intention to
                   drain cash from Forte that would cause Forte to
                   liquidate contain materially false and/or misleading
                   statements about Defendants' intentions and plans
                   for Forte*………………………………………………………12

              2.   *Statements misrepresenting confidential settlement
                   discussions between Forte's counsel and Camac's
                   counsel contain materially false and/or misleading
                   statements about what Forte's counsel said during those
                   confidential settlement discussions*……………………………14

              3.   *Statements regarding Dr. Wagner's belief in Forte's
                   long-term viability contain materially false and/or
                   misleading statements about Dr. Wagner's commitment
                   to Forte and the development of FB-102*………………………...15

              4.   *Statements regarding the decline of Forte's stock price
                   since its IPO contain materially false and/or misleading
                   statements about Forte's stockholder returns and
                   performance*……………………………………………………...16

5.     *Statements regarding Forte's willingness to meet with investors contain materially false and/or misleading statements that management is unwilling to meet with shareholders*……………………………………………………...18

6.     *Statements regarding the resignation of Forte's auditor include materially false and/or misleading statements that the auditor resigned because "the Company had ineffective controls"*…………………………………………………...……18

ii.    Forte adequately alleged a Section 13(d) claim and questions of group formation involve issues of fact ill-suited for a motion to dismiss……………………………………………………………...19

D.    Forte's Amended Complaint adequately alleges a Section 16(d) claim which is subject only to notice pleading requirements………………………….21

E.    Forte's Declaratory Judgment Act claim is not duplicative of its Section 13(d) claims and is not moot because it seeks a declaration as to the full scope and composition of the Wolfpack…………………………...22

F.    Forte's Amended Complaint adequately alleges a pendent state law tortious interference claim, and the Court should not dismiss this claim for lack of jurisdiction…………………………………………...24

III.    CONCLUSION………………………………………………………………..25

## <u>TABLE OF AUTHORITIES</u>

15 U.S.C. § 78m(d) ............................................................................................................... 2, 7

15 U.S.C. § 78n(a) ............................................................................................................... 2, 3

15 U.S.C. § 78p(b) ................................................................................................................... 2

17 C.F.R. § 240.14a-9 ......................................................................................................... 2, 4

28 U.S.C. § 2201 ..................................................................................................................... 2

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
38 F.3d 211 (5th Cir. 1994) ...................................................................................................... 4

*Ashford Hosp. Prime Inc. v. Sessa Capital (Master) LP*,
No. 3:16-CV-00527-N, 2017 WL 2955366 (N.D. Tex. Feb. 17, 2017) ............................ 4, 19, 21

*CNW Corp. v. Japonica Partners, L.P.*,
776 F. Supp. 864 (D. Del. 1990) .............................................................................................. 4

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
No. 20-CV-9992 (PAC), 2021 WL 4443258  (S.D.N.Y. Sept. 27, 2021) ........................... 5, 6, 11

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ......................................................................................... passim

*Flanagan v. Chesapeake Expl., LLC*,
No. 3:15-CV-0222-B, 2015 WL 13814515 (N.D. Tex. Aug. 10, 2015)....................................23

*GAF Corp. v. Milstein*,
453 F.2d 709 (2d Cir. 1971)...................................................................................................... 8

*Gearhart Industries, Inc. v. Smith Int'l, Inc.*,
741 F.2d 707 (5th Cir. 1984) .................................................................................................... 8

*Gen. Aircraft Corp. v. Lampert*,
556 F.2d 90 (1st Cir. 1977)....................................................................................................... 9

*Gilbert v. Donahoe,* 751 F.3d 303 (5th Cir. 2014) ...................................................................... 3

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
286 F.3d 613 (2d Cir. 2002)...................................................................................................... 7

*Hollywood Casino Corp. v. Simmons*,
No. 3:02-CV-0325-M, 2002 WL 1610598 (N.D. Tex. July 18, 2002)........................... 19, 21, 22

*Horsehead Res. Dev. Co., Inc. v. B.U.S. Envt'l. Services, Inc.*,
928 F. Supp. 287 (S.D.N.Y. 1996) ........................................................... 11

*Hulliung v. Bolen*,
548 F. Supp. 2d 336 (N.D. Tex. 2008) ..................................................... 11

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)........................................................................... 3, 4

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)................................................................. 11

*Mind Med. (MindMed) Inc. v. Freeman*,
No. 23CV7875 (DLC), 2024 WL 729260 (S.D.N.Y. Feb. 22, 2024)........................... 7

*Nano Dimension Ltd. v. Murchison Ltd.*,
No. 1:23-cv-02566, 2023 WL 4422788 (S.D.N.Y. July 10, 2023)............................. 20

*Olagues v. Perceptive Advisors LLC*,
902 F.3d 121 (2d Cir. 2018)................................................................. 22

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ......................................................................... 15

*Pantry Pride, Inc. v. Rooney*,
598 F. Supp. 891 (S.D.N.Y. 1984) ......................................................... 4

*Regus Mgmt. Group, LLC, v. Int'l Bus. Mach. Corp.*,
No. CIV.A.3:07-CV-1799-B, 2008 WL 2434245 (N.D. Tex. June 17, 2008) ............... 23

*Rosen v. Brookhaven Capital Mgmt. Co., Ltd.*,
113 F. Supp. 2d 615 (S.D.N.Y. 2000)...................................................... 8, 20

*Sec. & Exch. Comm'n v. Farnsworth*, No. 22 CIV. 8226 (KPF),
2023 WL 5977240 (S.D.N.Y. Sept. 14, 2023)............................................ 15, 17

*Specialties of Mex. Inc. v. Masterfoods USA*,
2010 WL 2488031 (S.D. Tex. June 14, 2010)............................................. 24

*Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*,
No. 09 Civ. 8262, 2010 WL 2835548 (S.D.N.Y. July 13, 2010) ......................... 11

*Vestcom Int'l v. Chopra*,
114 F. Supp. 2d 292 (D.N.J. 2000) ......................................................... 9

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991)...................................................................... 4, 15

*Warner Communications, Inc. v. Murdoch*,
581 F. Supp. 1482 (D. Del. 1984) .......................................................................................... 9, 10

*Xtria LLC v. Tracking Sys., Inc.*,
No. 3:07-CV-0160-D, 2007 WL 1791252 (N.D. Tex. June 21, 2007)…………………………..23

# I.    INTRODUCTION

Forte is a biopharmaceutical company focused on developing critical treatments for autoimmune diseases. Forte's lead product—a cutting-edge molecule called FB-102—stands to be a first-in-class therapeutic for serious conditions, including a graft-versus-host disease (a potentially fatal transplant complication), alopecia areata, and vitiligo. If successful, FB-102 could ease the suffering of millions of patients with these serious conditions. The prospective market for FB-102 is worth billions of dollars and sophisticated institutional investors, committed to Forte's mission to develop these critical treatments, have invested millions into the Company.

Defendants invested in Forte *after* it announced it would pursue FB-102 and *after* it announced at least $40 million of cash and cash equivalents on its books. First Amended Complaint[1] ("Amended Complaint" or "Am. Compl.") at ¶ 55. Defendants saw cash on Forte's balance sheet and pounced, commencing a coordinated Wolfpack[2] attack to instigate dramatic, long-term-value-destroying actions to line the their pockets to the detriment of Forte's stakeholders. Defendants continue to advance the false narrative that they have been magnanimously pushing for Forte to return capital to "long suffering" shareholders. However, none of the Wolfpack shareholders can be considered "long" anything when it comes to Forte. Defendants' ultimate goal here is clear—to raid Forte's cash and which would force the Company

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as defined in Forte's First Amended Complaint.

[2] Defendants argue that Forte "fabricated" a "Wolfpack conspiracy" and "invented" the term "Wolfpack" for this litigation. Mot. at 9, 27. However, the term "Wolfpack" has been used for years in the securities context to describe aggregations of activist investors who band together in secret to acquire large blocks of a company's stock. See Kimberly Goldman, *Theories & Solutions on Wolf Pack Activism*, 7 Mich. Bus. & Entrepreneurial L. Rev. 341, 342 (explaining that "wolf pack" activism occurs when "activists work in unison to gain control of corporate boards" to "gain high profits with extremely low risk" and that "the emergence of wolf packs . . . may come at the expense of other passive shareholders"); *Third Point LLC v. Ruprecht*, No. CIV.A. 9469-VCP, 2014 WL 1922029, at *17 (Del. Ch. May 2, 2014) (discussing claims that activist hedge funds formed a group "or 'wolfpack,' for the purpose of jointly acquiring large blocks of a target company's stock."); Thomas W. Briggs, *Corporate Governance and the New Hedge Fund Activism: An Empirical Analysis*, 32 J. Corp. L. 681, 691-92, 697 (2007) (discussing "wolf pack tactics" used by activist funds).

to liquidate for the sole benefit of Defendants and to the detriment of Forte's other stockholders, stakeholders, and the patients that stand to benefit from Forte's long-term success.

## II.    ARGUMENT & AUTHORITIES

Defendants' Motion fails to show that dismissal is warranted on any of Forte's claims. Rather, Defendants dispute the facts before discovery has taken place. At this stage, the Court must accept Forte's well-pleaded allegations as true and construe Forte's Amended Complaint in the light most favorable to Forte. As explained below, Forte pleads sufficient facts showing that Defendants (1) made materially false and/or misleading statements in proxy solicitation materials filed with the Securities and Exchange Commission ("SEC") in violation of 15 U.S.C. § 78n(a) and 17 C.F.R. § 240.14a-9; (2) formed a group within the meaning of Section 13(d), failed to disclose the true composition of that group, and failed to meet the requirements applicable to such a group in violation of 15 U.S.C. § 78m(d); (3) filed false and misleading Schedule 13Ds in violation of 15 U.S.C. § 78m(d), depriving Forte's stockholders of information to which they are lawfully entitled; (4) engaged in unlawful short-swing trading in violation of 15 U.S.C. § 78p(b); and (5) tortiously interfered with investors' potential investments in Forte and caused Forte to lose out on significant economic opportunities and value. Forte also pleads sufficient facts showing it it is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Defendants have formed a group under the securities laws and have failed to disclose that group and its true intentions for Forte.

Forte's claims involve fact-specific inquiries and discovery will further uncover evidence supporting Forte's claims. However, for the purposes of this motion, Forte's Amended Complaint exhaustively alleges facts that, taken in the light most favorable to Forte, lead to the logical conclusion that Defendants have acted unlawfully and caused great injury and harm to Forte and its stakeholders. Defendants failed to show that dismissal is warranted on any of Forte's claims at this early stage of the proceedings and Forte respectfully asks this Court to deny Defendants'

Motion and allow discovery to commence.[3]

### A. Forte has standing to bring Section 14(a) and Section 13(d) claims under the Exchange Act.

Defendants' argument that Forte lacks standing to bring Section 14(a) and Section 13(d) claims is unavailing especially considering that dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is only warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle Plaintiff to relief." *See Gilbert v. Donahoe,* 751 F.3d 303, 307 (5th Cir. 2014). Further, Defendants' contention that "[s]hareholders now know all there is to know" because Defendants amended their Schedule 13D filings to attach Forte's Original Complaint, ignores the key purposes of the Williams Act to protect investors, ensure fair corporate suffrage, and ***prevent recurrence of abuses*** that frustrate the voting rights of stockholders. *See* Mot. at 2; *See J.I. Case Co. v. Borak*, 377 U.S. 426, 430-31 (1964). As shown below, Forte established standing to bring Sections 14(a) and 13(d) claims and is entitled to relief.

### i. Forte has standing to sue for damages under Section 14(a) of the Exchange Act for violations of Rule 14a-9.

Defendants argue that Forte, as a corporate issuer, lacks standing to assert a claim for damages pursuant to Section 14(a) and that it is "only logical to reject a right of action on the part of corporate issuers given the statute's purpose." Mot. at 14. Section 14(a) prohibits the solicitation of proxies from shareholders of a publicly traded company without complying with the rules enacted by the SEC. 15 U.S.C. § 78n(a). Rule 14a-9 prohibits the use of proxy statements and other proxy-related communications "containing any statement which, at the time and in light of

---

[3] In their Motion, Defendants repeatedly cite to "facts" drawn from the "Verified Amended Class Action and Derivative Complaint, publicly filed on October 27, 2023 in the related action in the Delaware Court of Chancery." Mot. at 5, fn. 7. While Forte does not dispute that it is proper for a court to take judicial notice of matters of public record, Forte disputes the notion that allegations in a complaint are to be treated as "facts" rather than what they are, allegations. Further, Defendants' attempts to allege competing facts in this Texas action and engage in factual disputes akin to arguments made in a summary judgment motion shows that there are factual disputes underlying this specific case and dismissal at this stage, before any discovery has been conducted, is inappropriate.

---

the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

Defendants rely on *Borak*, where the Supreme Court recognized a limited right of action for shareholders to seek damages when a proxy is misleading and discuss how the Court grounded this right in the goal to protect investors and ensure fair corporate suffrage, among other things. Mot. at 13 (citing *Borak*, 377 U.S. at 430-31). Defendants also cite *Virginia Bankshares* where the Supreme Court refused to extend an implied right of action to a minority shareholder whose votes were not required for the corporate action being challenged. Mot. at 13 (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1106-08 (1991)). Defendants then cite a Fifth Circuit case where the Court held that owners of securities who did not have voting rights lacked standing to bring an action under Section 14(a) raising concerns about "open[ing] a Pandora's box by extending that right to any person potentially injured by a proxy statement" Mot. at 13 (citing *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 230 (5th Cir. 1994)). However, Forte is not "any person potentially injured by a proxy statement." *See id.* And there is no black letter law or blanket rule to the effect that issuers never have standing, under any circumstances, to sue for money damages under Section 14(a) for violations of Rule 14a-9.[4] While this Court previously concluded that an issuer did not have standing bring Section 14(a) claims, it did so "[b]ecause the Court views section 14(a) as protecting those voting rights" that are "critical to standing under section 14(a)." *See Ashford Hosp. Prime Inc. v. Sessa Capital (Master) LP*, No. 3:16-CV-00527-N, 2017 WL 2955366, at *9 (N.D. Tex. Feb. 17, 2017). Recognizing Forte's right to bring this suit

---

[4] *See e.g., Enzo Biochem, Inc. v. Harbert Discovery Fund*, LP, No. 20-CV-9992 (PAC), 2021 WL 4443258, at *6 (S.D.N.Y. Sept. 27, 2021); *CNW Corp. v. Japonica Partners, L.P.*, 776 F. Supp. 864, 869 (D. Del. 1990); *Pantry Pride, Inc. v. Rooney*, 598 F. Supp. 891, 899 (S.D.N.Y. 1984).

comports with this Court's view that the purpose of Section 14(a) is to protect shareholder voting rights. Through this action, Forte seeks to protect the rights of its shareholders by holding Defendants accountable for their unlawful scheme to control the Company, deprive shareholders of their voting rights, and withhold critical information to which shareholders are lawfully entitled to make informed investment decisions. Defendants' actions have injured Forte and its stockholders by depriving them of information required to be disclosed by the securities laws.

Further, "recognizing an issuer's right of action for money damages under Section 14(a) would comport with the congressional intent identified in *Borak* of protecting 'fair corporate suffrage' and 'the voting rights of shareholders'" *Enzo Biochem, Inc.,* 2021 WL 4443258, at *6 (evaluating and applying standards from *Borak* and *Virginia Bankshares* and concluding that "an issuer has Article III standing to sue for monetary damages under Section 14(a) for alleged violations of Rule 14a-9"). "In fact, an issuer, as opposed to individual shareholders, would typically be better situated in terms of resources and corporate influence to pursue litigation under Section 14(a) and as a result, enforce the 'fair corporate suffrage' policies undergirding the statute." *Id.* Also, the policy concerns which led the *Virginia Bankshares* court to "'half the growth of the private right under Rule 14a-9' would not arise by permitting an issuer to sue for monetary damages" and rather, the policy considerations weigh in favor of recognizing that Forte has standing to bring an action against Defendants for failure to comply with Section 14(a). *See id.* at *7. Defendants' notion that recognizing Forte's standing here would be "contrary to the express purpose of the Williams Act" is unfounded. *See* Mot. at 14. "On the contrary, a suit for money damages brought by an issuer under Section 14(a) would proceed just like any other *Borak* action—except of course that the plaintiff would be an issuer and not a shareholder." *See id.* Forte seeks to protect the rights of its shareholders through this action and therefore enforce the purposes

of the Williams Act. Forte does not seek to "tip the scales in favor of management" or "retaliate[e]" against shareholders or third parties seeking to replace management or proposing a different strategic direction for the company." *See* Mot. at 12, 14. Rather, Forte aims to "enforce the 'fair corporate suffrage' policies undergirding the statute" and the "voting rights of shareholders" by holding Defendants accountable for their campaign of misinformation designed to strong-arm the Company into distributing its vital cash to the detriment of Forte's shareholders and requiring Defendants to disclose the information to which shareholders are lawfully entitled. Further, the Court in *Enzo* explained:

> Denying a corporation an implied right of action to sue for money damages, under Section 14(a), would also belie the logic of shareholder derivative suits brought under *Borak*. Under *Borak*, a shareholder has an implied right of action to sue for monetary or injunctive relief under Section 14(a) either in a derivative or personal capacity. Assuming a *Borak* plaintiff were to bring a derivative lawsuit and the corporation were to then accept the plaintiff's litigation demand (if one is made), the factual scenario there would be precisely what is at issue here: a corporation suing for money damages under Section 14(a). ***The logic behind derivative lawsuits, then, also suggests that an issuer be permitted to sue for money damages under Section 14(a)***.

*Enzo Biochem, Inc.,* 2021 WL 4443258, at *6 n.5 (emphasis added). The purpose of Forte's suit undoubtedly comports with the policy underpinnings of Section 14(a) and Forte has standing to sue for damages for violations of Rule 14a-9.

Finally, Forte adequately pled that it sustained injury as a result of Defendants' unlawful actions. *See* Am. Compl. ¶¶ 168-173 (describing in detail the injury that Forte and its stockholders have suffered due to Defendants' unlawful conduct). As a direct result of Defendants' unlawful conduct, Forte "was forced to expend resources to file numerous proxy solicitation materials, prepare and conduct an extensive presentation to ISS, and hire independent consultants and attorneys." *Id.* ¶ 170. In addition, "several investors declined to invest in Forte after raising items related to Camac, the Wolfpack, and their misrepresentations and omission." *Id.* Forte was also

"forced to expend significant sums to combat Defendants' misinformation" and "to fight Defendants' smear campaign." *Id.* ¶ 171. *See Mind Med. (MindMed) Inc. v. Freeman*, No. 23CV7875 (DLC), 2024 WL 729260, at *4 (S.D.N.Y. Feb. 22, 2024) (corporate issuer had standing to bring claim under section 14(a) and Rule 14a-9 and plaintiff adequately pled that it sustained an injury as a result of defendants' actions, specifically "that it had to spend millions of dollars to combat the defendants' misstatements and omissions in their proxy solicitation materials" thus it adequately pled that "injuries are redressable in the form of monetary damages."). Forte adequately pled injuries redressable by monetary damages, and it has established standing to sue for damages under Section 14(a) of the Exchange Act for violations of Rule 14a-9.

### ii.    Forte has standing to bring an action against Defendants for failure to comply with Section 13(d) of the Exchange Act.

Defendants' argument that Forte lacks standing to bring its Section 13(d) claims because Congress enacted Section 13(d) solely to protect unaffiliated shareholders is unavailing. *See* Mot. at 15-16. Section 13(d) requires that any person who acquires more than 5% beneficial ownership of a public company must make a filing with the SEC, known as Schedule 13D, disclosing certain information about their background and identity; the number of shares they have purchased; the source of funds used for the purchases; and if they seek to gain control of the company, any plans they have to make "major changes" to its business or structure, such as a merger, liquidation, or sale of assets. 15 U.S.C. § 78m(d).

Defendants argue that Forte's right of action for damages "does not serve the aim . . . [and] may actually frustrate congressional purposes." Mot. at 15-16 (quoting *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 619-21 (2d Cir. 2002)). To the contrary, as the issuer of Forte stock, Forte not only has standing to bring this action to compel Defendants to comply with Section 13(d), but it is also "the only party which can promptly and effectively police

Schedule 13D filings, for it is fair to assume that it scrutinizes carefully changes in its stock ownership–particularly of the sort which can initiate control." *See GAF Corp. v. Milstein*, 453 F.2d 709, 720-21 (2d Cir. 1971) (concluding "that the obligation to file *truthful* statements is implicit in the obligation to file with the issuer, and *a fortiori*, the issuer has standing under section 13(d) to seek relief in the event of a false filing" (emphasis in original)). Forte is the party in the best position to force compliance with Section 13(d) to ensure that Forte's shareholders have all the information to which they are entitled to make informed investment decisions. Therefore, Forte seeks to serve the aims of the Williams Act to protect fair corporate suffrage and the voting rights of shareholders.

Further, questions of group formation relevant to Section 13(d) claims are particularly ill-suited for motions to dismiss as they involve questions of fact. [5] Forte has more than adequately pled sufficient facts to support a plausible inference that Defendants formed a group subject to the requirements of Section 13(d) and failed to meet those requirements, and Forte is now entitled to discovery into the full scope and composition of that group.

### B.  Forte's Section 14(a) and Section 13(d) claims are not moot simply because Defendants filed amended disclosures attaching Forte's Original Complaint.

Defendants' supplemental disclosures attaching Forte's Original Complaint fall far short of correcting or curing the deficiencies in their required disclosures. *See* Mot. at 16-17. Attaching Forte's Original Complaint and refuting the allegations made therein does not fulfill the purpose of the Williams Act which is "full and fair disclosure to investors." *See* Mot. at 16 (quoting *Gearhart Industries, Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 715 (5th Cir. 1984)). Defendants'

---

[5] *See Rosen v. Brookhaven Capital Mgmt. Co., Ltd.*, 113 F. Supp. 2d 615, 632 (S.D.N.Y. 2000) ("Matters of group purpose are even more difficult to discern, for intent may not always be fully formed, but may mature and manifest at any point in a continuum . . . To grant defendants a Rule 12(b)(6) motion to dismiss and thereby to curtail inquiry by a derivative plaintiff before meaningful discovery has occurred regarding a Schedule 13D group filer's true plans and purpose as to a given stock acquisition, could create a safe haven for groups to conceal their real purposes behind formulaic terms.").

argument is fundamentally flawed as it suggests that a party is immune from consequences under Section 13(d) or any other disclosure requirements simply by disclosing in their proxy filings that they have been sued for their violations. *See* Mot. at 19 (quoting *Vestcom Int'l v. Chopra*, 114 F. Supp. 2d 292, 299 (D.N.J. 2000) ("[W]here the informative purpose of section 13(d) is served, further controversy over the alleged violations is moot.")).[6] The informative purpose of Section 13(d) has not been served in this case and shareholders do not "know all there is to know." *See* Mot. at 2. To the contrary, the effect of Defendants' amended disclosures, attaching Forte's Original Complaint, is merely to inform investors of a ***possibility of*** their group's existence and scope rather than the ***fact of the group's existence and of the full scope of that group***. If a Section 13(d) group does exist, that fact ***must*** be disclosed under Section 13(d), not the mere possibility of that fact. And, whether such Section 13(d) group actually exists, and who its members are, is a factual issue that cannot be determined at the motion to dismiss stage. *See Warner Communications, Inc. v. Murdoch*, 581 F. Supp. 1482, 1501 (D. Del. 1984) (holding that "disclos[ure] of adverse claims" alone does not cure disclosure deficiencies under Section 13(d) as "the true facts would often remain obscured and hidden from investors"); *Gen. Aircraft Corp. v. Lampert*, 556 F.2d 90, 96-97 (1st Cir. 1977) ("As the very raison d'etre of Section 13(d) was thwarted by appellants' continued failure to disclose the statutorily required information … irreparable injury would occur to shareholders and the investing public if appellants were allowed to continue their activities without correcting and amplifying their Schedule 13D."). What is material to Forte's shareholders is whether Defendants formed a Section 13(d) group, the members

---

[6] Defendants' reliance on *Vestcom* is misplaced. The plaintiff in *Vestcom* did not allege there was an undisclosed shareholder group, but rather sought an additional disclosure that would require defendants to "admit to the shareholders that they violated the securities laws." *Vestcom*, 114 F. Supp. 2d at 300. On summary judgment, the court held that those claims were moot (not at the motion to dismiss stage). *Vestcom* is not analogous to this case because it did not involve an undisclosed stockholder group and the decision was issued at the summary judgment stage after plaintiffs had the opportunity to conduct discovery.

of that group, and the group's intentions. Simply disclosing that Forte accused Defendants of secretly forming such a group is insufficient to satisfy Section 13(d) because the facts "remain obscured and hidden from investors." *See Warner Communications, Inc.*, 581 F. Supp. at 1501. Defendants continuously fail to disclose the statutorily required information to Forte and its stockholders and until Defendants are forced to disclose the true extent and composition of the Wolfpack, they will continue to be in violation of Section 13(d).

The same is true with regard to Forte's Section 14(a) claims—Defendants' amended Schedule 13Ds, disclosing that they are being sued for violations of Section 14(a), hardly allow Defendants to be immune from the consequences under Section 14(a) for filing materially false and/or misleading proxy solicitation materials. To suggest as much is certainly not in line with the underlying purpose of the Williams Act to provide full and fair disclosure to investors. *See* Mot. at 16. Defendants' entire mootness argument rests on the erroneous presumption that stockholders have now been fully informed. But that is not true. The full extent of Defendants' deception is not presently known, and cannot be determined until discovery is conducted.

Moreover, the Amended Complaint adequately alleges Section 14(a) and Section 13(d) claims for purposes of surviving a motion to dismiss (as further explained in the following section), and Forte is entitled to discovery to further develop those claims and uncover all the facts to which stockholders are lawfully entitled. *See Warner Communications, Inc.*, 581 F. Supp. at 1501 (holding that defendants' efforts to cure disclosure claims by filing court pleadings as an exhibit to their amended Schedule 13D was insufficient, noting the difference between "inform[ing] investors of the possibility of the group's existence, rather than the fact of the group's existence" and "[w]hether such a group exists is a factual issue that cannot be determined on the present motions to dismiss."). Further, "where the mootness issue is inextricably intertwined with the

merits, deferral on the jurisdictional issues until the summary judgment stage is appropriate." *Horsehead Res. Dev. Co., Inc. v. B.U.S. Envt'l. Services, Inc.*, 928 F. Supp. 287, 290 (S.D.N.Y. 1996); *see also Enzo Biochem, Inc.,* 2021 WL 4443258, at *4 (holding that deferral on mootness issue was appropriate because each mootness argument "calls for the resolution of delicate factual determinations that closely track the merits of this Section 14(a) lawsuit."). Therefore, this issue is ill-suited for a motion to dismiss as it calls for resolution of complex factual issues that go to the heart of the merits of a Section 14(a) suit. Regardless, Forte pled sufficient factual allegations to establish standing to bring Section 13(d) and Section 14(a) claims against Defendants.

### C. Forte's Amended Complaint satisfies the heightened pleading requirements of the PSLRA and Rule 9(b).

To state a claim under Section 14(a) and Rule 14a-9, "a plaintiff must show that '(1) defendants misrepresented or omitted a material fact in a proxy statement . . . ; (2) defendants acted at least negligently in distributing the proxy statement . . . ; and (3) the false or misleading proxy statement was an essential link in causing the [loss-generating] corporate actions.'" *Hulliung v. Bolen,* 548 F. Supp. 2d 336, 339 (N.D. Tex. 2008) (citations omitted). The issue at this stage is not whether Forte proved that Defendants' statements were materially false and/or misleading, but whether Forte sufficiently "specif[ied] each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *See* 15 U.S.C. § 78u-4(b)(1). Similarly, under Rule 9(b), the issue at this stage is whether Forte "stat[ed] with particularity the circumstances constituting fraud or mistake" by "(1) specify[ing] the statements the plaintiff contends were fraudulent, (2) identify[ing] the speaker, (3) stat[ing] where and when the statements were made, and (4) explain[ing] why the statements were fraudulent." *Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, No. 09 Civ. 8262, 2010 WL 2835548, at *7 (S.D.N.Y. July 13, 2010) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). As explained in detail below, Forte pled

sufficient facts to state a claim under the Williams Act.

### i. Forte's Amended Complaint sufficiently alleges the who, what, when, where, and why of each of Defendants' misleading statements relating to its Section 14(a) claim.

Viewing the allegations in the light most favorable to Forte, it is clear that Forte met the heightened pleading requirements by specifying each materially false and/or misleading statement and explaining why such statements are false and/or misleading. For each category of statements Forte quotes the statement at issue, identifies the speaker, states where and when the statement was made, and explains why the statement is fraudulent. Therefore, Forte satisfied the heightened pleading requirements of the PSLRA and Rule 9(b). Defendants' arguments merely show that there are factual disputes for which discovery is necessary to conclusively resolve. Whether the statements are materially false and/or misleading at the end of the day is a factual issue that cannot be determined at the motion to dismiss stage[7] and Forte has more than met its burden under the heightened pleading requirements. The Amended Complaint identifies six categories of false and/or misleading statements and this Response will similarly address each in turn, pointing the Court's attention to Forte's allegations of the "alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent." *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006).

> #### 1. *Statements regarding Defendants' intention to drain cash from Forte that would cause Forte to liquidate contain materially false and/or misleading statements about Defendants' intentions and plans for Forte.*

Defendants argue that they satisfied Section 14(a) by disclosing material facts regarding their objectives and plans for Forte, and they made consistent statements over the course of a year

---

[7] *Frankfurt-Trust Investment Luxemburg AG v. United Technologies Corp.*, 336 F.Supp.3d 196, 229 (S.D.N.Y., 2018) ("Generally, materiality is typically a fact-intensive endeavor ill-suited for resolution on a motion to dismiss.")

that they intended to return capital to shareholders. Mot. at 21-22. First, whether the statements identified by Forte are actually false and/or misleading is not the inquiry at this stage. The issue is whether Forte "alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent." *See Blackwell*, 440 F.3d at 287. Forte has done so. Forte not only attaches the relevant proxy materials to the Amended Complaint[8] but also specifically highlights where, when, and to whom Defendants made the fraudulent statements, and why those statements are fraudulent, thereby satisfying the heightened pleading requirements of the PSLRA and Rule 9(b). *See* Am. Compl. ¶¶ 127-138.

For example, Forte alleges that "[i]n additional proxy solicitation materials filed by Defendants with the SEC on August 31, 2023, which included an investor presentation titled 'The Case for Boardroom Change at Forte Biosciences' (the 'Defendants' Investor Presentation'), Defendants claimed, 'To be clear: our Group is not demanding the liquidation of Forte, rather, we want all directors to thoroughly and objectively investigate the potential pathways to maximize stockholder value.'" *Id.* ¶ 128. Forte explains "[t]hese statements were materially false and/or misleading when made because they mischaracterized Defendants' agenda for the Company, which was publicly disclosed for the first time over one year ago and routinely thereafter: to agitate for a quick distribution of nearly all of Forte's capital to stockholders that would effectively lead to the liquidation of the Company…." *Id.* ¶ 130. Forte continues: "[f]ar from advocating for the Board to 'investigat[e] the potential pathways to maximize shareholder value,' about a year prior Camac '[u]rge[d] the Board to Reverse Course and Return Capital to Long-Suffering Shareholders—or Risk Facing Action from Camac' in a press release accompanying its Schedule

---

[8] The Court may rely on documents incorporated into the complaint by reference and "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

13D/A filed on August 17, 2022." *Id.* ¶ 131. The allegations continue as Forte painstakingly goes through multiple of Defendants' proxy materials to show a pattern of misleading and contradicting statements made by Defendants, explains who made those statements, when they were made, why they were made, and why such statements are fraudulent. Therefore, Forte has met its burden to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *See* 15 U.S.C. § 78u-4(b)(1).

> 2. *Statements misrepresenting confidential settlement discussions between Forte's counsel and Camac's counsel contain materially false and/or misleading statements about what Forte's counsel said during those confidential settlement discussions.*

In their proxy solicitation materials, Defendants falsely recounted confidential settlement discussions in which Forte's counsel spoke hypothetically while discussing what he understood to be Camac's end game and theorizing how it could play out. Am. Compl. ¶ 144. Camac's counsel claimed that he had a conversation with Forte's counsel where Forte's counsel allegedly "relayed that if Dr. Wagner was not reelected at the Annual Meeting, the Board planned to immediately reappoint him as a director following the meeting." *Id.* ¶ 140. Defendants reiterated this misrepresentation in multiple subsequent additional proxy materials referenced in and attached by Forte to the Amended Complaint. *See id.* ¶¶ 141-143. Forte explains that these statements "were materially false and/or misleading when made because they mischaracterized statements made by the Company's counsel during the confidential settlement discussions. Rather than dismissing the possibility that the Camac Nominees may prevail in the proxy contest and insisting that 'the Board planned to immediately reappoint him as a director,' the Company's counsel was speaking hypothetically while discussing what it understood to be Camac's end game and theorizing how it would play out." *Id.* ¶ 144. Defendants do not deny they made these statements and rather argue that the statements accurately reflect the confidential settlement discussions – a question of fact

inappropriate for resolution at the motion to dismiss stage. *See* Mot. at 22. Forte "alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent." *See Blackwell*, 440 F.3d at 287. Therefore, Forte satisfied the heightened pleading requirements.

>   3.  *Statements regarding Dr. Wagner's belief in Forte's long-term viability contain materially false and/or misleading statements about Dr. Wagner's commitment to Forte and the development of FB-102.*

Defendants argue that their statement about Dr. Wagner's belief in Forte's long-term viability was an honestly-held opinion and therefore cannot be the basis for a misrepresentation claim, citing cases holding that pure statements of opinion are not untrue statements of material fact even if ultimately proved to be false. Mot. at 22-23.[9] However, Defendants' statements were not "classic statement[s] of opinion." *See* Mot. at 22. Rather, Defendants knowingly made false statements designed to deliberately mislead investors into questioning Dr. Wagner's belief in Forte's long-term success in order to gather support for the Wolfpack's campaign for immediate liquidation.[10] *See* Am. Compl. ¶¶ 145-150. For instance, Forte alleges "[i]n additional proxy solicitation materials filed by Defendants with the SEC on August 31, 2023, which included the Defendants' Investor Presentation, Defendants claimed, 'We question how much Dr. Wagner believes in the long-term viability of Forte, given he has been an active seller in recent years.'" *Id.* ¶ 146. Forte explains why this (and other statements quoted) is a false and/or misleading statement: "[f]ar from being an 'active seller in recent years,' Dr. Wagner sold certain of his Forte shares almost two years prior in September 2021. Since then, Dr. Wagner **has repeatedly purchased Forte shares**, including in the open market and the Private Placement. ***Such purchases were***

---

[9] Citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); *Virginia Bankshares*, 501 U.S. at 1095.

[10] *See Sec. & Exch. Comm'n v. Farnsworth*, No. 22 CIV. 8226 (KPF), 2023 WL 5977240, at *10 (S.D.N.Y. Sept. 14, 2023) (explaining that even statements of opinion give rise to liability when the speaker either does not hold the professed belief, the supporting facts supplied are untrue, or the speaker omits information whose omission makes the statement misleading to a reasonable investor).

**publicly disclosed, and the latter was acknowledged by Defendants** in the same Defendants'
Investor Presentation in which they questioned Dr. Wagner's belief in the long-term viability of
the Company." *Id.* ¶ 149 (emphasis added).

Therefore, Forte sufficiently alleged facts showing that Defendants' statement that Dr.
Wagner has been an "active seller" is a knowingly false statement made by Defendants. The fact
that Dr. Wagner's purchases of stock were publicly disclosed and acknowledged by Defendants
does not negate Defendants' responsibility to file truthful proxy solicitation materials—which also
ignore that Dr. Wagner's total compensation decreased approximately 78% from 2021 to 2022,
demonstrating the exact opposite of questionable commitment to the Company. *See id.* ¶ 150.
Further, the fact that Dr. Wagner's purchases of stock were publicly disclosed and acknowledged
by Defendants further shows that Defendants knew they were making a false, or at the very least
misleading, statement about Dr. Wagner's belief in Forte's long-term viability. Forte has "alleged
fraudulent statements, the speaker, when and where the statements were made, and why they are
fraudulent[,]" thereby satisfying the pleading requirements. *See Blackwell*, 440 F.3d at 287.

> 4. *Statements regarding the decline of Forte's stock price since its
>    IPO contain materially false and/or misleading statements about
>    Forte's stockholder returns and performance.*

Defendants stated in proxy materials that Forte has a "[t]rack record of value destruction:
[s]ince the closing of the Company's initial public offering in April 2017, the share price has
declined approximately 99% and the Company has accumulated losses of $102.7 million since
inception." Am. Compl. ¶ 152. Defendants also stated that "there has been 'Significant Value
Destruction Under Chair and CEO Dr. Wagner'" and that "Forte has delivered negative total
stockholder returns … and significantly underperformed relevant indices over all relevant time
horizons," including "since [the] IPO." *Id.* ¶ 153. Forte explains that "[t]hese statements were
materially false and/or misleading when made because none of the current Board members,

including the two incumbent directors seeking reelection at the 2023 annual meeting, were in place until June 2020 at the earliest" therefore "the drop in Forte's stock price since the IPO through June 2020 was not (and could not have been) under the direction of any of the current Board members." *Id.* ¶ 154. Further, these statements are materially false and/or misleading because they "misrepresent that the decrease in the Forte stock price dating back to the IPO occurred during the current Board's tenure." *Id.* ¶ 154. These statements also "suggest that Defendants themselves suffered losses due to the decrease in stock price" when in actuality, "ATG and Camac purchased Forte stock in June and July 2022, respectively, only after Forte had already decided to pursue FB-102." *Id.* ¶ 155.

Defendants argue again that, because the Company's financial performance and Board tenure are matters of public opinion, they are not false or misleading. Mot. at 24. However, Forte is not alleging that the figures Defendant cites (share price, losses, etc.) are false. Rather, Forte alleges that Defendants used these figures in conjunction with false and/or misleading statements that Forte's Board has "delivered negative total stockholder returns" and "significantly underperformed" and bemoans Forte's "[t]rack record of value destruction" to mislead investors into thinking that the drop in Forte's stock price was as a result of actions of Forte's current Board members and that Defendants suffered losses as a result of this.[11] *See* Am. Compl. ¶ 154-55. Ultimately, Forte's allegations meet the heightened pleading requirements by sufficiently showing what statements are at issue, who made such statements, when and in what context those statements were made, and why they are fraudulent. *See Blackwell*, 440 F.3d at 287.

---

[11] *See Farnsworth*, 2023 WL 5977240, at *10 (plaintiff sufficiently pled that an opinion statement was misleading by alleging facts showing that the defendant misrepresented the historical data).

5.   *Statements regarding Forte's willingness to meet with investors
     contain materially false and/or misleading statements that
     management is unwilling to meet with shareholders.*

Defendants argue that by "inform[ing] shareholders that Forte's Board '[f]ail[ed] to constructively engage' in meetings [with investors], that is, again, a statement of opinion and is not actionable." Mot. at 24. Defendants made statements in their proxy materials that Defendants "have been approached by numerous significant stockholders, ***all of whom*** indicated that management has been unwilling to speak with them." Am. Compl. ¶ 157. This is simply not true, and Forte sufficiently alleged facts to show that Defendants knowingly made this false and/or misleading statement. "In reality, Forte has met with investors that requested such meetings during the course of Defendants' proxy contest, ***including Cable Car***." *Id.* ¶ 159 (emphasis added). Not only are Defendants' statements false, they are also misleading because they suggest that Forte's Board steadfastly refuses to engage in conversations with stockholders when the facts known to Defendants at the time they made these statements show the opposite. Again, Forte's allegations sufficiently show what statements are at issue, who made such statements, when and in what context those statements were made, and why they are fraudulent. *See Blackwell*, 440 F.3d at 287.

6.   *Statements regarding the resignation of Forte's auditor include
     materially false and/or misleading statements that the auditor
     resigned because "the Company had ineffective controls."*

In additional proxy solicitation materials, Defendants stated "Concerningly, the Company's auditor, Mayer Hoffman McCann P.C., recently resigned stating that 'the Company had ineffective controls to sufficiently review the completeness and accuracy of the annual tax provision.'" Am. Compl. ¶ 162. Forte explains why these statements were materially false and/or misleading when made, "because when MHM informed Forte on July 31, 2023 that it would not stand for re-appointment for the fiscal year ending December 31, 2024, MHM ***did not make any statement about why it resigned***." Am. Compl. 163 (emphasis added). *See id.* ¶ 164-165 (where

Forte explains how MHM's audit reports never contained an adverse opinion or disclaimer of opinion as to any "ineffective controls" or anything of the like). Defendants' statement that the Form 8-K "disclosed that there were 'no…reportable events…other than in connection with [the disclosed deficiency]'" and suggestion that MHM viewed ineffective tax accounting controls as a material matter to be reported to shareholders is misleading. *See* Mot. at 25. It was materially false and/or misleading for Defendants to claim that MHM "resigned stating that 'the Company had ineffective controls to sufficiently review the completeness and accuracy of the annual tax provision'" when such a statement was actually Forte management's own conclusion disclosed in the Company's annual report five months earlier. Am. Compl. ¶ 167.

Further, the fact that shareholders had access to the facts does not relieve Defendants of their obligations under Section 14(a) and Rule 14a-9, or immunize Defendants from liability for filing proxy statements and other proxy-related communications "containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary to make the statements therein not false or misleading." *See* 17 C.F.R. § 240.14a-9. Forte sufficiently alleged facts showing what statements are at issue, who made such statements, when and in what context those statements were made, and why they are fraudulent, thereby satisfying the heightened pleading requirements. *See Blackwell*, 440 F.3d at 287.

### ii. Forte adequately alleged a Section 13(d) claim and questions of group formation involve issues of fact ill-suited for a motion to dismiss.

"To plead the existence of a group properly, a complaint must allege (1) the existence of an agreement among the group's members, and (2) that the agreement aims to further a common objective." *Ashford*, 2017 WL 2955366, at *8 (quoting *Hollywood Casino Corp. v. Simmons*, No. 3:02-CV-0325-M, 2002 WL 1610598, at *2 (N.D. Tex. July 18, 2002)). First, as Defendants point

out, "whether the requisite agreement exists is a question of fact" and "to survive a motion to dismiss, '[a] plaintiff alleging a group must plead enough factual matter (taken as true) to suggest an agreement as made." Mot. at 26.[12] Questions of group formation under Section 13(d) are extremely fact-specific and ill-suited for resolution at the motion to dismiss stage. Granting a motion to dismiss before the plaintiff has a chance to engage in discovery regarding the group's "true plans and purpose could create a safe haven for groups to conceal their real purposes behind formulaic terms." *See Rosen*, 113 F. Supp. 2d at 632. Even without yet having the chance to engage in discovery into the true makeup and purpose of the Wolfpack, Forte sufficiently pled that Defendants made an agreement, formed a group, and failed to comply with Section 13(d).

Defendants argue that Forte fails to allege facts supporting a plausible inference that Defendants had an agreement including Funicular or BML with respect to Forte and its stock. Mot. at 27. To the contrary, Forte pled numerous factual allegations supporting the inference that Defendants had an agreement with Funicular and BML to purchase significant amounts of Forte stock with the goal to push for liquidation. *See* Am. Compl. ¶¶ 79-94, 110-126, 138, 168. Forte also alleges that Defendants began buying up shares of Forte stock only after Forte pivoted to FB-102 in May 2022 and, from the time they first invested in Forte, worked collectively to agitate for liquidation. *See id.* ¶¶ 79-94. For instance, "BML steadily purchased a significant amount of shares of Forte stock throughout April and May 2022. On May 24, 2022, BML publicly disclosed in a Schedule 13D that it had acquired a 8.94% stake in the Company." *Id.* ¶ 82. And, "[t]hat same day, Funicular bought its first shares of Forte stock. Funicular continued buying shares of Forte stock for the next month." *Id.* ¶ 83. "Two days later, on July 7, 2022, BML publicly disclosed in a Schedule 13D that it held a 9.1% stake in the Company." *Id.* ¶ 84. "One week later, on July 12,

---

[12] Quoting *Nano Dimension Ltd. v. Murchison Ltd.*, No. 1:23-cv-02566, 2023 WL 4422788, at *8 (S.D.N.Y. July 10, 2023).

2022, Camac began buying up shares of Forte stock. Camac continued to purchase shares of Forte stock for the next several weeks. On August 1, 2022, Camac publicly disclosed in a Schedule 13D that it had acquired a 7.5% stake in the Company" and Funicular purchased more shares of Forte stock around the same time. *Id.* ¶¶ 85-86.

Further, Forte alleged that Defendants "acted and continue to act together as a group within the meaning of Section 13(D) and its implementing regulations and collectively were the beneficial owners of more than 5% of Forte's common stock, requiring them to report as a group on Schedule 13D." *Id.* ¶ 191. Forte also alleges that Defendants failed to file a Schedule 13D disclosing their coordination as a group and that this failure has irreparably harmed Forte. *Id.* ¶ 195. Therefore, Forte met the requirements to allege "the existence of an agreement among the group's members" and "that the agreement aims to further a common objective" *Ashford*, 2017 WL 2955366, at *8 (quoting *Hollywood Casino Corp.*, 2002 WL 1610598, at *2).

### D.  Forte's Amended Complaint adequately alleges a Section 16(d) claim which is subject only to notice pleading requirements.

Defendants argue that Forte's Section 16(d) claim fails because Forte lacks standing under Article III and has not alleged facts plausibly supporting its claims. Mot. at 28-29. First, Forte adequately alleges a concrete injury flowing from the Section 16(b) violation, thereby establishing that Forte has standing to bring a Section 16(d) claim against Defendants. Specifically, Forte alleges "Defendants formed a group holding more than a 10% beneficial ownership in Forte, and have engaged is regular purchasing and sales of the Company's securities without holding those securities for longer than a six-month period leading to illegal profits that must be disgorged." Am. Compl. ¶ 210. Forte seeks a judgment disgorging those illegal profits. *Id.* ¶ 213.

Second, Defendants argue that Forte failed to state a claim under Section 16(b). To state a claim under Section 16(b), "a plaintiff must plausibly allege that 'there was (1) a purchase and (2)

a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period.'" *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018). Forte alleged that Defendants, as a group holding more than 10% beneficial ownership in Forte, bought and sold Forte securities without holding those securities longer than a six-month period. As such, Forte met the notice pleading requirements under Rule 8 for pleading a section 16(b) cause of action. *See* Am. Compl. ¶ 210. "Recovery under Section 16 is not based on omissions or fraudulent statements and is not subject to the heightened pleading requirements of Rule 9(b) or the PSLRA. Instead, it is a strict liability provision, and is subject only to the notice pleading requirements of 12(b)(6)." *Hollywood Casino Corp.*, 2002 WL 1610598, at *2-3 ("[T]he Complaint asserts Hollywood's claim to recover profits made on any transactions in Hollywood stock by any of the Defendants occurring within a six-month period. That paragraph gives both Jack and Bill sufficient notice of what Hollywood intends to prove and is sufficient to survive a 12(b)(6) motion."). The Amended Complaint adequately provides notice of what Forte intends to prove and is therefore sufficient to survive the motion to dismiss.[13]

### E. Forte's Declaratory Judgment Act claim is not duplicative of its Section 13(d) claims and is not moot because it seeks a declaration as to the full scope and composition of the Wolfpack.

Defendants argue that Forte's Declaratory Judgment Act ("DJA") claim is duplicative of its Section 13 claims and rely in part on *Regus*, where the Court determined that the declaratory judgment claim was duplicative of the breach of contract claim because the issue underlying the declaratory judgment claim would be resolved as part of the breach of contract claims. *See* Mot.

---

[13] Forte also recently filed a Motion for Partial Relief from the PSLRA Discovery Stay seeking an accounting of all short-swing profits that, if granted, will allow Forte to identify the specific amounts of illegal profits alleged. *See* Dkt # 23.

at 31-32.[14] By contrast, Forte's DJA claim is not duplicative of its Section 13(d) claim and does not "add[] nothing" because Forte's Section 13 claims are backwards-looking, seeking money damages and declaratory relief for harm caused by Defendants' past failure to disclose that they were acting as a group and failure to comply with the rules governing such groups. *See* Mot. at 31. Specifically, Forte's Section 13(d) claims seek declaratory and injunctive relief for Defendants' failure to file a Schedule 13D disclosing their coordination as a group, and that failure irreparably injured Forte and its stockholders in the past by depriving them of information to which they were lawfully entitled. Am. Compl. at ¶¶ 185-207. Forte's DJA claim is distinct because it is not only about the existence of the Wolfpack, but it also seeks a declaration as to the full scope and membership of the Wolfpack so that other stockholders can understand the full scope of opposition they may **face on corporate decisions in the very near future**. Defendants also rely upon *Xtria LLC*, where the court dismissed a declaratory judgment claim that duplicated a breach of contract claim. *See* Mot. at 32.[15] In that case, the plaintiff sought a declaratory judgment as to the effect and damages resulting from a breach of contract. *Id.* This is not analogous to Forte's claim because Forte is not seeking a declaration as to the effect and damages resulting from any of Forte's other claims. The same distinction applies with regard to Defendants' reliance on *Flanagan* because the plaintiff in that case also sought a declaration on how their damages for breach of contract should be calculated. *See* Mot. at 32.[16].

Defendants also argue that "just like Plaintiff's Williams Act claims, the declaratory judgment claim is also moot in view of Defendants' supplemental disclosures . . . ." Mot. at 32.

---

[14] *See Regus Mgmt. Group, LLC, v. Int'l Bus. Mach. Corp., No.* CIV.A.3:07-CV-1799-B, 2008 WL 2434245, at *2 (N.D. Tex. June 17, 2008).

[15] *See Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007).

[16] *See Flanagan v. Chesapeake Expl., LLC.,* No. 3:15-CV-0222-B, 2015 WL 13814515, at *9 (N.D. Tex. Aug. 10, 2015).

This argument is unavailing because the information to which Forte's stockholders are lawfully entitled includes the full composition and scope of the Wolfpack. Forte's DJA claim is not simply about the past existence of a group, rather it seeks a declaration as to the current full scope and composition of the group so that its stockholders have all the information to which they are entitled in order to make informed investment decisions. Defendants' amended disclosures fail to inform investors of who the members of the Wolfpack are and what the group's intentions really are.[17]

### F. Forte's Amended Complaint adequately alleges a pendent state law tortious interference claim, and the Court should not dismiss this claim for lack of jurisdiction.

For the reasons stated above, Forte disagrees with Defendants' contention that this Court should dismiss Forte's federal claims and therefore decline to exercise supplemental jurisdiction over Forte's state law claim tortious interference claim. *See* Mot. at 32. Further, Forte sufficiently stated a claim for tortious interference even under the heightened pleading requirements of Rule 9(b). Tortious interference under Texas law requires a plaintiff must prove: (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Specialties of Mex. Inc. v. Masterfoods USA*, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010).

First, Forte pled "Forte enjoyed existing and prospective business relationships in that it is

---

[17] *See* Dkt. #23, Forte's Motion for Partial Relief from the PSLRA Discovery Stay to conduct limited discovery to uncover the true composition and scope of the Wolfpack because Forte's stakeholders have a right to this information before the upcoming annual meeting and this information is also necessary to determine all the necessary parties to be put on notice to preserve evidence relevant to this suit.

a publicly traded company routinely seeking additional investors." Am. Compl. ¶ 222. Second, Forte pled "Defendants engaged in the wrongful conduct detailed above, including their manipulation of the market for Forte's stock for short-term gain and in order to facilitate their smear campaign in aid of their proxy contest." *Id.* ¶ 223. In addition, "several investors declined to invest in Forte after raising items related to Camac, the Wolfpack, and their misrepresentations and omission." *Id.* 170. And, as explained above, for every materially false and/or misleading statement that constituted Defendants' manipulation of the market and smear campaign in aid of their proxy contest, Forte pled with particularity each fraudulent statement and why such statements were fraudulent, satisfying Rule 9(b)'s heightened pleading requirements. *See id.* ¶¶ 127-173. Third, Forte pled "Defendants' interference with investors' potential investments in Forte was knowing and intentional" and "Defendants' actions were gross, wanton, willful, and in furtherance of a conspiracy to maliciously harm and damage Forte and defraud the investing public, for which damages should be awarded." *Id.* ¶ 225, 227. Fourth, "As a result of Defendants' smear campaign, the current and other potential investors in the Company planned to invest further in the Company were dissuaded from doing so" and "Defendants' actions were gross, wanton, willful, and in furtherance of a conspiracy to maliciously harm and damage Forte and defraud the investing public, for which damages should be awarded." *Id.* ¶ 224, 227. Forte has thus met all the required elements and stated a claim for relief on its state-law tortious interference claim.

### III.    CONCLUSION

For the reasons stated above, Forte respectfully asks this Court to deny Defendants' Motion in its entirety and allow discovery to commence.

Dated: March 26, 2024

*/s/ Michael W. Stockham*
Stephen C. Rasch
stephen.rasch@hklaw.com
Texas State Bar No. 16551420
Michael W. Stockham
michael.stockham@hklaw.com
Texas State Bar No. 24038074
**HOLLAND & KNIGHT LLP**
One Arts Plaza
1722 Routh Street Suite 1500
Dallas, TX 75201
Telephone: (212) 969-1700

**ATTORNEYS FOR PLAINTIFF
FORTE BIOSCIENCES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on March 26, 2024.

/s/ *Michael W. Stockham*