UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FORTE BIOSCIENCES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CAMAC FUND, LP, et al., <br><br> Defendants. | Case No. 3:23-cv-02399-DCG |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

I.    PLAINTIFF HAS NO CLAIM UNDER SECTIONS 14(a) OR 13(d) ............................. 2

       A.    Plaintiff Lacks Standing To Seek Damages............................................................. 2

       B.    The Relief Plaintiff Purportedly Seeks Is Moot...................................................... 4

       C.    Plaintiff Still Cannot Identify A Material Misstatement Of Fact .......................... 5

       D.    Plaintiff's Group Allegations Are Baseless Conjecture.......................................... 8

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 16(b)............................ 9

III.    PLAINTIFF'S DECLARATORY JUDGMENT
CLAIM IS DUPLICATIVE AND IMPROPER ................................................................ 9

IV.    THE TORTIOUS INTERFERENCE CLAIM IS NOT SUFFICIENTLY PLED ............ 10

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*7547 Corp. v. Parker & Parsley Development Partners, L.P.*,
   38 F.3d 211 (5th Cir. 1994) ...................................................................................2

*Ashford Hospital Prime Inc. v. Sessa Cap. (Master) LP*,
   No. 3:16-CV-00527-N, 2017 WL 2955366 (N.D. Tex. Feb. 17, 2017) ...........................2, 10

*Avnet, Inc. v. Scope Industries*,
   499 F. Supp. 1121 (S.D.N.Y. 1980)..........................................................................4

*Cartica Management, LLC v. Corpbanca, S.A.*,
   50 F. Supp. 3d 477 (S.D.N.Y. 2014)..........................................................................5

*Cendec Corp. v. Farley*,
   573 F. Supp. 1382 (S.D.N.Y. 1983)..........................................................................4

*CNW Corp. v. Japonica Partners, L.P.*,
   776 F. Supp. 864 (D. Del. 1990)......................................................................... 2-3

*Diceon Electronics, Inc. v. Calvary Partners, L.P.*,
   772 F. Supp. 859 (D. Del. 1991)......................................................................... 2-3

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
   No. 20-CV-9992 (PAC), 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ................................3

*Forgent Networks, Inc. v. Sandberg*,
   No. A-09-CA-499LY, 2009 WL 2927015 (W.D. Tex. Aug. 27, 2009) ..................................4

*GAF Corp. v. Milstein*,
   453 F.2d 709 (2d Cir. 1971)..................................................................................4

*General Aircraft Corp. v. Lampert*,
   556 F.2d 90 (1st Cir. 1977)..................................................................................5

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
   286 F.3d 613 (2d Cir. 2002)..................................................................................4

*Hysong v. Encore Energy Partners LP*,
   No. CIV.A. 11-781, 2011 WL 5509100 (D. Del. Nov. 10, 2011) .........................................7

*In re Apple Computer Securities Litigation*,
   886 F.2d 1109 (9th Cir. 1989) ...............................................................................7

*Land & Buildings Investment Management, LLC v. Taubman Centers, Inc.*,
   No. 17-11576, 2017 WL 3499900 (E.D. Mich. Aug. 16, 2017) ................................................. 4

*Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*,
   No. 3:14-CV-2660-N, 2015 WL 13469916 (N.D. Tex. Sept. 24, 2015) ............................... 10

*Lions Gate Entertainment Corp. v. Icahn*,
   No. 10 CV 08169 HB, 2011 WL 1217245 (S.D.N.Y. Mar. 30, 2011) ..................................... 4

*Lujan v. Defs. of Wildlife*
   504 U.S. 555 (1992) ................................................................................................................... 3

*Motient Corp. v. Dondero*,
   529 F.3d 532 (5th Cir. 2008) ................................................................................................ 3-4

*Nano Dimension Ltd. v. Murchison Ltd*,
   No. 1:23-CV-02566 (JLR), 2023 WL 4422788 (S.D.N.Y. July 10, 2023) .................. 4-5, 8-9

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ................................................................................................................... 7

*Packer v. Raging Capital Master Fund, Ltd.*,
   661 F. Supp. 3d 3 (E.D.N.Y. 2023) .......................................................................................... 9

*Pantry Pride, Inc. v. Rooney*,
   598 F. Supp. 891 (S.D.N.Y. 1984) ............................................................................................ 3

*Rosen v. Brookhaven Capital Management Ltd.*,
   113 F. Supp. 2d 615 (S.D.N.Y. 2000) ...................................................................................... 9

*Schaffer v. CC Investors, LDC*,
   115 F. Supp. 2d 440 (S.D.N.Y. 2000) ...................................................................................... 9

*Sharp v. Navistar Int'l Corp.*,
   No. 15-CV-00413, 2020 WL 7062557 (N.D. Ill. Nov. 30, 2020) ............................................ 9

*Taro Pharmaceutical Industries, Ltd. v. Sun Pharmaceutical Industries, Ltd.*,
   No. 09 CIV. 8262 (PGG) 2010 WL 2835548 (S.D.N.Y. July 13, 2010) ............................. 4, 5

*Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Cap. LLC*,
   No. CV221101GMMGLS, 2023 WL 5835786 (D.P.R. Aug. 10, 2023) .............................. 4, 5

*Tenet Healthcare Corp. v. Community Health Systems, Inc.*,
   839 F. Supp. 2d 869 (N.D. Tex. 2012) .................................................................................... 2

*TransUnion v. Ramirez,*
  594 U.S. 413 (2021) ................................................................................................9

*Virginia Bankshares, Inc. v. Sandberg,*
  501 U.S. 1083 (1991) ...........................................................................................2, 4

*Weeden v. Continental Health Affiliates, Inc.,*
  713 F. Supp. 396 (N.D. Ga. 1989) ............................................................................4

**Other Authorities**        **Page(s)**

Fed R. Civ. P. 9(b) ........................................................................................................ 1, 10

15 U.S.C. § 78m(d) ......................................................................................................*passim*

15 U.S.C. § 78n(a) .......................................................................................................*passim*

15 U.S.C. § 78p(b) ............................................................................................................ 9

## PRELIMINARY STATEMENT[1]

Plaintiff's Opposition does nothing to save its claims. It ignores controlling case law holding that, as an issuer, the Company lacks standing to assert claims under §§ 14(a) and 13(d), and likewise ignores cases holding that the claims are moot because Defendants have fully disclosed the baseless allegations. Even if Plaintiff could overcome those deficiencies (it asks this Court for an exception based on nonsensical "policy" rationales), it still has not alleged a claim. Management's mere disagreement with Defendants' statements and opinions during last year's proxy contest (no matter how vehement) does not create a material misstatement of fact under § 14(a), and its group allegations under §13(d) are based on precisely the type of vague speculation about parallel stock purchases that courts routinely reject. Plaintiff also lacks standing to assert its § 16(b) claim because it has not even attempted to allege an actual injury-in-fact, and it fails to allege a group for the reasons above, which is fatal to the short-swing trading allegations. Finally, Plaintiff's Opposition confirms that its declaratory judgment claim is wholly duplicative of the relief sought by its § 13(d) claim and is otherwise improper, and the tortious interference claim is based on nothing but vague allusions to events that Forte should know the details of first-hand, and thus comes nowhere near satisfying the heightened pleading standard under Rule 9(b). Plaintiff's desire for "discovery to further develop those claims" is no answer to these numerous pleading deficiencies. Opp. at 10.

At bottom, this is a retaliatory action stemming from a dispute over the strategic direction of the Company. It makes no sense when viewed otherwise: the current managers of Forte—who, as a matter of public record, have destroyed virtually all stockholder value—have caused the Company to bring claims that it lacks a legal basis to assert, arising from a shareholder meeting

---

[1] Capitalized terms are defined in Defendants' Memorandum of Law ("Br"). *See* ECF 27.

that is long over, against a "Wolfpack" they invented, purportedly consisting of shareholders with the most to lose from any "long-term-value-destroying actions." Opp. at 1. This matter demonstrates why corporate disputes should be resolved through corporate governance, not under the guise of federal securities litigation. The case should be dismissed in its entirety with prejudice.

## ARGUMENT

I.  **PLAINTIFF HAS NO CLAIM UNDER SECTIONS 14(a) OR 13(d)**

  A.  **Plaintiff Lacks Standing To Seek Damages**

Plaintiff ignores the body of case law—including this Court's prior decisions—holding that issuers lack standing to seek damages under § 14(a). *See, e.g., Ashford Hosp. Prime Inc. v. Sessa Cap. (Master) LP*, 2017 WL 2955366, at *9 (N.D. Tex. Feb. 17, 2017) (Godbey, J.) (holding that corporate issuer lacks standing because it has "no voting rights in its own stock" and Section 14(a) "protect[s] only interest-holders with voting rights"); *Tenet Healthcare Corp. v. Community Health Systems, Inc.*, 839 F. Supp. 2d 869, 871-72 (N.D. Tex. 2012) (same). Plaintiff's assertion that "there is no black letter law or blanket rule to [that] effect" is simply wrong. *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 229-30 (5th Cir. 1994) (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991)) (holding that "section 14(a) . . . protect[s] only interest-holders with voting rights" and "we believe that it goes too far to allow persons not even entitled to vote to assert a claim under that provision").

Relying on three out-of-district trial court decisions, Plaintiff effectively invites this Court to rethink its prior jurisprudence. Opp. at 4, n.4. But the cases are not persuasive:

- In *CNW Corp. v. Japonica Partners, L.P.*, a court in the District of Delaware considered issuer standing in 1990 as a "matter of first impression" for which it had "no legal precedent." 776 F. Supp. 864, 869 (D. Del. 1990). The following summer the Supreme Court decided *Virginia Bankshares* and, two months later, another court in the District of Delaware

2

concluded *CNW* could not be followed. *See Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 867-69 (D. Del. 1991) (holding that an "issuer lacks standing to sue for damages under § 14(a)" in light of *Virginia Bankshares* and noting "doubt" as to "holding of *CNW*").

- *Pantry Pride, Inc. v. Rooney* was decided in 1984 and did not address a § 14(a) claim for damages. 598 F. Supp. 891, 894 (S.D.N.Y. 1984). Rather, the issuer sought to "enjoin certification of the results of [the] Annual Meeting of Shareholders." *Id.* The court denied the motion because there were no misrepresentations, and the court noted that it would "not use section 14(b) to squash legitimate differences of opinion." *Id.* at 901 ("The same principles of free speech, free analysis and free criticism apply to corporate elections as apply to the political forum.").

- *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP* is a non-binding outlier that the Court should ignore. 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021). *Enzo* cites only *CNW* and *Pantry Price* in support of its holding (which have no precedential value for the reasons stated above). *Id.* at *6. Further, *Enzo*'s dubious policy arguments have not been adopted by other courts and are unlikely to carry any weight given the Supreme Court's reticence to expand historical implied rights of action. *See, e.g., Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).

Even if Plaintiff could assert a monetary damages claim under § 14(a) (it cannot), it has no actual injury and thus lacks Article III standing. The purported "injuries" it alleges (Opp. at 6-7) have nothing to do with the alleged misstatements under § 14(a), but rather are merely ordinary expenses associated with a proxy contest. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring a "causal connection between the injury and the conduct complained of").

As to its claim under § 13(d), Plaintiff also lacks standing and its Opposition ignores controlling case law. *See Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008) (holding that "there is no private cause of action for money damages under Section 13(d)"). The only case

3

it cites, *GAF Corp. v. Milstein*, 453 F.2d 709, 720-21 (2d Cir. 1971), was subsequently rejected by *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, which held that "there is no private damages remedy for issuers under § 13(d)." 286 F.3d 613, 620 (2d Cir. 2002). Plaintiff's policy musings about "the party in the best position to force compliance with Section 13(d)" are irrelevant. Opp. at 8.

      **B.**      **The Relief Plaintiff Purportedly Seeks Is Moot**

Because Defendants have fully disclosed Plaintiff's baseless allegations, its claims are moot and there is no live controversy. *See, e.g.*, *Avnet, Inc. v. Scope Industries*, 499 F. Supp. 1121, 1127 (S.D.N.Y. 1980); *Nano Dimension Ltd. v. Murchison Ltd.*, 2023 WL 4422788, at *10-11 (S.D.N.Y. July 10, 2023); *Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Cap. LLC*, 2023 WL 5835786, at *9 (D.P.R. Aug. 10, 2023); *Land & Buildings Inv. Mgmt., LLC v. Taubman Centers, Inc.*, 2017 WL 3499900, at *3 (E.D. Mich. Aug. 16, 2017); *Lions Gate Entertainment Corp. v. Icahn*, 2011 WL 1217245, at *1 (S.D.N.Y. Mar. 30, 2011); *Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, 2010 WL 2835548, at *9-10 (S.D.N.Y. July 13, 2010); *Forgent Networks, Inc. v. Sandberg*, 2009 WL 2927015, at *2 (W.D. Tex. Aug. 27, 2009); *Weeden v. Continental Health Affiliates, Inc.*, 713 F. Supp. 396, 399-400 (N.D. Ga. 1989); *Cendec Corp. v. Farley*, 573 F. Supp. 1382, 1384-86 (S.D.N.Y. 1983).

Plaintiff ignores this mountain of case law and, instead, cites one forty-year-old case that has been rejected and another that is simply irrelevant. First, in *Warner Communications, Inc. v. Murdoch*, a court in the District of Delaware held that a subsequent § 13(d) disclosure "does not necessarily cure the alleged omissions." 581 F. Supp. 1482, 1501. But the body of case law in the following decades rejected that approach. For example, in *Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.* (cited elsewhere in Plaintiff's brief) the court expressly rejected *Warner*:

4

> To the extent that this portion of *Warner Communications* suggests that where there exists a good faith dispute as to facts or an alleged legal violation, the Williams Act requires more than disclosure of the dispute, *it is inconsistent with the weight of authority discussed above and will not be followed by this Court in this case.* Consistent with the authority cited above, this Court does not believe that a tender offeror should be placed in a position of being forced to either admit liability which it disputes, or violate the securities law by failing to disclose the alleged, disputed violation.

2010 WL 2835548, at *16 (S.D.N.Y. July 13, 2010) (emphasis added). Second, Plaintiff's citation to *General Aircraft Corp. v. Lampert* also has no application because it did not involve supplemental disclosures and the court had already found, based on an evidentiary record, that the Schedule 13D was "inaccurate and misleading." 556 F.2d 90, 95-96 (1st Cir. 1977). Thus, the court ordered that the "Schedule 13D [be] amended to reflect accurately their intentions." *Id.* at 97. The case says nothing about Defendants' supplemental disclosures here.

The Plaintiff's personal view that disclosure of the allegations alone is inconsistent with the "purpose of the Williams Act" carries no weight. Opp. at 10. *See Ocean Capital*, 2023 WL 5835786 at *9 ("Admission of liability is not required."); *Nano Dimension*, 2023 WL 4422788 at *11 ("Section 13(d) requires no more" than disclosure of "good faith dispute"); *Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 494 (S.D.N.Y. 2014) ("[P]arty is not required to admit allegations in a Schedule 13D that it disputes in good faith.").

### C.  Plaintiff Still Cannot Identify A Material Misstatement Of Fact

Plaintiff does nothing to address its pleading deficiencies other than to repeat that the statements are "fraudulent" and "discovery is necessary." Opp. at 12. No fishing expedition is necessary here because Plaintiff cannot articulate, under any conception of the facts, why the various opinions and immaterial statements at issue were misleading.

**Defendants' View On Liquidation.** Plaintiff continues to claim that certain of the Defendants somehow misrepresented their interest in liquidating Forte because of a statement that

5

they are "not demanding the liquidation of Forte, rather, [they] want all directors to thoroughly and objectively investigate the potential pathways to maximize stockholder value." Opp. at 13. But Plaintiff *admits* (contradicting its own claim) that Defendants "publicly disclosed [their interest in liquidation] for the first time over one year" before the purported misstatements (Opp. at 13), and Plaintiff simply ignores all of the other related public statements made by Defendants regarding liquidation cited in the opening brief. Br. at 21. No stockholder could possibly have understood Defendants' statement to suggest that (1) liquidation was not an option being considered by Defendants; or (2) liquidation was the only option being considered by Defendants.

**Statements By Forte's Counsel.** Plaintiff still cannot articulate what exactly was "false" about the statements made by Forte's counsel during the proxy contest. Opp. at 14-15. Forte does not dispute that its counsel made the statements, nor that the Board would not have reappointed Wagner. At most, Plaintiff appears to suggest that the statements should have been designated as "hypothetica[l]" "theorizing," but that immaterial nitpicking does not render the statements false.

**Dr. Wagner's Belief in Forte's Long-Term Viability.** Plaintiff does not challenge Defendants' honestly held belief as to Wagner's commitment to Forte, and its arguments demonstrate only that management's opinion differs. Opp. at 15-16. Plaintiff argues that Wagner was not actually an "active seller," but admits that he "sold certain of his Forte shares." Opp. at 15. At most, Plaintiff suggests that Defendants' view was unfair given that Wagner thereafter "purchased Forte shares, including in the open market," but Plaintiff admits that those purchases were public and *"acknowledged by Defendants in the same Defendants' Investor Presentation."* Opp. at 15-16 (emphasis added). How the above could constitute a federal securities violation is a mystery. *See In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989) (no duty to disclose information "that has been made credibly available to the market by other sources").

6

**Decline of Forte's Stock Price Since Its IPO.** Plaintiff does not dispute the literal truth of any of the performance-related statements, including that "Forte has a track record of value destruction," "there has been Significant Value Destruction Under Chair and CEO Dr. Wagner," and returns have been "negative." *See, e.g.,* Opp. at 16-17 ("Forte is not alleging that the figures . . . are false"). Rather, as above, Plaintiff views the statements as unfair because they did include management-friendly counterpoints, including that some of the losses were not "under . . . the current Board" and each Defendant individually did not realize all of the "decrease in stock price." *Id.* at 16-17. But all of the foregoing was public, none was contradicted by Defendants, and Plaintiff provides no authority holding that § 14(a) requires a proxy contestant to make the other side's arguments in connection with undisputedly true facts. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189–90 (2015) ("Reasonable investors understand that opinions sometimes rest on a weighing of competing facts."); *Hysong v. Encore Energy Partners LP*, 2011 WL 5509100, at *8 (D. Del. Nov. 10, 2011) ("[S]ection 14(a) does not entitle [plaintiff] to 'more' information—it only entitles him to the information that Rule 14a–9 obliges it to supply.").

**Meetings with Investors.** Plaintiff's opposition demonstrates that it is relying solely on semantics to fabricate a misrepresentation. Defendants are alleged to have stated that they were (1) "approached by numerous significant stockholders" and (2) "all . . . indicated that management has been unwilling to speak with them." Am. Compl. ¶ 157. Plaintiff has neither identified the group of "significant stockholders" nor alleged that they said otherwise. Opp. at 18. Rather, as above, it contends that the statement was unfair because it did not include a management-friendly counterpoint: namely, that Forte purportedly "met with [other] investors."

7

**Resignation of the Company's Auditor.** Plaintiff's allegations about its former auditor likewise rely on semantics. Plaintiff admits that MHM agreed there was a control deficiency, and Plaintiff itself alleges that the Form 8-K announcing MHM's resignation expressly referenced the deficiency. Opp. at 18-19. Plaintiff admits that "shareholders had access to [these] facts." Opp. at 19. Whether Defendants' statements could be read to suggest that MHM identified the deficiency or merely agreed with it is simply immaterial and does not render the statement false or misleading.

### D. Plaintiff's Group Allegations Are Baseless Conjecture

Plaintiff's Opposition confirms that its § 13(d) claim is based entirely on independent purchases of stock by Defendants around the same time period. Opp. at 20-21 ("On May 24, 2022, BML publicly disclosed . . . that it had acquired a 8.94% stake in the Company"; "[T]hat same day, Funicular bought its first shares of Forte stock"; "[O]n July 12, 2022, Camac began buying up shares of Forte stock"). Based on this, Forte concludes that Defendants "act[ed] together as a group" and "had an agreement . . . with respect to Forte and its stock." *Id.* at 20. Not surprisingly, Plaintiff does not address case law holding that such allegations are *wholly inadequate* to establish a § 13(d) claim. *Nano Dimension*, 2023 WL 4422788 at *8 ("Allegations of parallel investment decisions or pre-existing relationships also do not suffice to plead a group."); *Schaffer v. CC Investors, LDC*, 115 F. Supp. 2d 440, 444 (S.D.N.Y. 2000) ("[N]othing more than parallel investment decisions by defendants" does not state claim); *Sharp v. Navistar Int'l Corp.*, 2020 WL 7062557, at *14 (N.D. Ill. Nov. 30, 2020) ("[P]arallel conduct alone does not suffice to demonstrate that the two investors acted as a group").[2]

---

[2] Plaintiff's citation to *Rosen v. Brookhaven Capital Management Ltd.*, 113 F. Supp. 2d 615 (S.D.N.Y. 2000) is inapplicable because defendants admitted to acting as a group but relied on an exemption for investment advisors. *Id.* The court permitted discovery as to the exemption but cautioned against granting "a license for fishing expeditions" in future cases. *Id.* at 631.

## II.  PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 16(b)

Plaintiff concedes that concrete harm is required to pursue its Section 16(b) claim but cites none. Opp. at 21. Rather, it alleges, at most, a statutory violation precisely of the kind that the Supreme Court has held to be insufficient to establish Article III standing. *Id.* at 22 (arguing that § 16(b) is a "strict liability provision"); *see TransUnion v. Ramirez*, 594 U.S. 413, 434-35 (2021). That the statutory violation allows a remedy of disgorgement is irrelevant under *TransUnion*, which requires actual, legally cognizable harm to Forte. *See Packer v. Raging Capital Master Fund, Ltd.*, 661 F. Supp. 3d 3, 11 (E.D.N.Y. 2023).

Further, even if Plaintiff could establish Article III standing (it cannot), Plaintiff's § 16(b) claim still fails because of its wholly deficient group allegations. *See, supra,* § I.D.

## III.  PLAINTIFF'S DECLARATORY JUDGMENT CLAIM IS DUPLICATIVE AND IMPROPER

Plaintiff attempts to justify its declaratory judgment claim by limiting it to a "declaration as to the full scope and membership of the Wolfpack" because Defendants purportedly failed to "inform investors of who the members of the [nonexistent] Wolfpack are." Opp. at 22-23. But even that thin reed does not support a declaratory judgment claim because it seeks *exactly* the same relief sought by the § 13(d) claim—namely, the disclosure of the "fact of the group's existence and of the full scope of that group." Opp. at 9; *see also id.* at 10 (Defendants must be "forced [to] disclose the true extent and composition of the Wolfpack").

Moreover, to the extent that Plaintiff seeks some additional information beyond what is required to be disclosed by the Williams Act, it fails to cite any authority suggesting that it can cause such disclosures through a declaratory judgment claim. Opp. at 24. *See, e.g.*, *Ashford*, 2017 WL 2955366 at *6 (dismissing declaratory judgment claim where party failed to state § 14(a) claim

9

because the Declaratory Judgment Act provides *only* a "procedural mechanism" and "creates no substantive rights").

## IV. THE TORTIOUS INTERFERENCE CLAIM IS NOT SUFFICIENTLY PLED

Plaintiff concedes its claim for tortious interference is subject to Rule 9(b) but still only recites the elements coupled with vague assertions. Forte alleges "manipulation of the market for Forte's stock" without describing the purported "manipulation" or how any Defendant participated or realized "short-term gain." Opp. at 25. Forte also alludes to "several investors [who] declined to invest in Forte" without alleging even the most basic circumstances surrounding these dubious events. *Id.* For example, *who* were the investors, *what* concerned them, *when* did the events happen, and *how* did Defendants factor in, if at all? *See Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*, 2015 WL 13469916, at *5 (N.D. Tex. Sept. 24, 2015) (Godbey, J.) (dismissing tortious interference claim premised on fraud where plaintiff failed to allege the "necessary who, what, when, where, and how"). The remainder of Forte's arguments are labels for yet-to-be alleged conduct. *See, e.g.*, Opp. at 25 ("[A]ctions were gross, wanton, willful" causing "harm and damage").

Even if the Court were inclined to exercise supplemental jurisdiction over the tortious interference claim (which it should not do for the reasons set forth in Defendants' opening brief), the Court should dismiss the claim under the heightened pleading standard.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

| | |
|---|---|
| April 9, 2024 | */s/ LeElle Slifer*<br>**WINSTON & STRAWN LLP**<br>LeElle B. Slifer<br>2121 North Pearl Street, Suite 900<br>Dallas, TX 75201<br>(214) 453-6431<br>lslifer@winston.com<br>**MORRIS KANDINOV LLP**<br>Aaron T. Morris (*pro hac* forthcoming)<br>Andrew W. Robertson (*pro hac* forthcoming)<br>305 Broadway, 7th Floor<br>New York, NY 10007<br>(212) 431-7473<br>aaron@moka.law<br>andrew@moka.law<br><br>*Attorneys for Defendants Camac Fund, LP, Camac Partners, LLC, Camac Capital, LLC, Eric Shahinian, Michael G. Hacke, Chris McIntyre, McIntyre Partnerships, LP, McIntyre Capital GP, LLC, McIntyre Capital Management, LP, McIntyre Capital Management GP, LLC, ATG Fund II LLC, ATG Capital Management, LLC and Gabriel Gliksberg*<br><br>*/s/ Daniel Charest*<br>**BURNS CHAREST LLP**<br>Daniel Charest<br>900 Jackson Street, Suite 500<br>Dallas, Texas 75202<br>(469) 904-4555<br>dcharest@burnscharest.com<br><br>*Attorneys for Defendants Funicular Funds, LP, The Funicular Fund, LP, Cable Car Capital LLC and Jacob Ma-Weaver* |

*/s/ Greg Weselka*
**GLAST, PHILLIPS AND MURRAY, PC**
Greg Weselka (00788644)
14801 Quorum Drive, Suite 500
Dallas TX 75254
Main: (972) 419-8300
Direct: (972) 419-8341
Fax: (469) 206-5027
gweselka@gpm-law.com

*Attorneys for Defendants BML Investment Partners, L.P., BML Capital Management, LLC and Braden M. Leonard*

12